UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TO BE ~~FILED UNDER SEAL~~

———————————————————— )
IN RE NATIONAL SECURITY LETTER ) Case No. 15-cv-01180-JKB *SEALED*
                               )
                               )
                               )
                               )
                               )
                               )
———————————————————— )

**DECLARATION OF DONALD GOOD,**
**ACTING ASSISTANT DIRECTOR,**
**CYBER DIVISION, FEDERAL BUREAU OF INVESTIGATION**

I, Donald Good, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I currently am the Acting Assistant Director of the Cyber Division, Federal Bureau of Investigation (FBI), United States Department of Justice, a component of an Executive Department of the United States Government. I also serve as the permanent Deputy Assistant Director of Intelligence for the Cyber Division.

2.      The Cyber Division manages investigations to identify, pursue, and defeat cyber adversaries targeting global U.S. interests, national information infrastructure, and Internet-facilitated criminal activity. It also supports FBI Counterterrorism, Counterintelligence, and Criminal investigations that call for technical expertise. These investigations often have international facets and national economic implications.

1

3.     I base the statements contained in this declaration upon my personal knowledge, my review and consideration of documents and information available to me in my official capacity, and information obtained from Special Agents and other FBI and Department of Justice employees. I have reached my stated conclusions in accordance with this information.

4.     The FBI is providing this sealed, but unclassified, declaration to demonstrate two things. First, I discuss generally the importance of NSLs as a tool as well as the importance of continued nondisclosure of information that could endanger national security or interfere with authorized national security investigations. See 18 U.S.C. § 2709(c); 18 U.S.C. § 3511(b). Additional information, addressing the NSL at issue in this case, is contained in a classified declaration submitted ex parte and in camera. Second, I address the FBI's adherence to Doe v. Mukasey, 549 F.3d 861 (2d Cir. 2008).

5.     As an official charged with general supervisory responsibilities for the FBI's cyber investigations, I have concluded the disclosure of information contained in the NSL in question would reveal sensitive FBI                    (G)

                                                    (G)

## I.     NSLs Are A Critical Tool In National Security Investigations

6.     NSLs serve a similar function as administrative or grand jury subpoenas in that they allow the FBI to obtain information, without advance court authorization but subject to judicial review. Unlike grand jury subpoenas, however, NSLs only permit the FBI to obtain a narrow set of types of information and from limited sources, such as communications service providers and financial institutions. The FBI typically uses NSLs early in national security

investigations to develop leads to assist in determining, among other things, investigative subjects' true identities, actions, intent, associates, and financial transactions. Just as critically, as with the use of grand jury subpoenas, the FBI uses NSLs to remove individuals from suspicion and to permit us to focus on more promising leads with our resources.

7.      The FBI's legal authority to issue NSLs derives from multiple sources: the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2709; the Right to Financial Privacy Act, 12 U.S.C. § 3414(a)(5); the Fair Credit Reporting Act, 15 U.S.C. § 1681u and v; and the National Security Act, 50 U.S.C. § 436.

8.      Under ECPA, the FBI may obtain non-content subscriber information, toll billing records, and electronic communication transactional records from a wire or electronic communications service provider, such as a telephone company or an Internet service provider. The FBI uses this NSL authority most frequently.

9.      Examples of electronic communication transactional records that the FBI may obtain lawfully are account numbers, physical addresses, subscriber telephone numbers, and other non-content information that is analogous to subscriber information or toll billing records for telephones. Significantly, the FBI cannot obtain any contents of communications through an ECPA NSL.

10.     FBI policy requires that all NSLs incorporate a certification by a high ranking official, at the level of a Special Agent in Charge or above, that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, and that such an investigation of a United States person is not conducted

3

solely on the basis of activities protected by the First Amendment to the Constitution of the United States. NSLs are an important and frequently used tool for the FBI.

II.    The Importance Of Nondisclosure

11.    By definition, the information sought through an NSL is relevant to an ongoing investigation of international terrorism or clandestine intelligence activities. Thus, only under highly unusual circumstances such as where the investigation is already overt is an NSL sought without invoking the nondisclosure provision. In the vast majority of cases, the investigation is covert and thus disclosure of receipt of an NSL and the information it seeks would seriously risk one of the statutory harms, i.e., a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person.

12.    Disclosure of NSLs to targets or other individuals who may publicize the receipt or information sought may prematurely reveal national security investigations to targets, causing them to change behavior patterns, such as by circumventing detection, destroying evidence, and expediting plans of attack.

13.    Moreover, disclosure can compromise the safety of confidential human sources or undercover employees participating in investigations, and can also cause individuals who are in league with the subjects of investigations to alter their behavior, such as avoiding detection, using other operatives who are not known to the United States or other deleterious actions. Disclosure of NSLs could also prompt subjects to communicate with the subjects of related investigations, jeopardizing those investigations as well.

14.     Finally, if targets or others could learn of NSLs and their contents through the expedient of public civil litigation, this could harm the FBI's relationships with other intelligence agencies or nations that share information with the FBI, as these entities may well conclude the FBI is not a suitable and reliable intelligence partner, capable of acting covertly, when legally justified to protect an investigation.

15.     In light of these concerns and those set forth in the ex parte submission, I certify, in accordance with Section 2709(c), that disclosure of the NSL at issue in this case, including its contents, may result in a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person.

III.     FBI Compliance With Doe v. Mukasey

16.     In Doe, 549 F.3d 861, the recipient of an ECPA NSL challenged the constitutionality of the nondisclosure requirements found in Sections 2709(c) and 3511(b) of Title 18. The court of appeals struck down as unconstitutional the nondisclosure provisions to the extent that those provisions failed to provide for government-initiated judicial review. However, the court of appeals said that the government could conform its NSL practice to the Constitution if it advised NSL recipients that they could give the government prompt notice of their intent to contest the nondisclosure requirements, triggering a reciprocal obligation on the government's part to initiate proceedings to enforce the nondisclosure requirements. Pursuant to the Doe opinion, the government bears the burden to prove that there exists good reason to believe that disclosure may risk one of the enumerated harms.

17.    After the <u>Doe</u> decision, the FBI promptly implemented the Second Circuit's reciprocal notice procedure. Since February 2009, the FBI has given each recipient of an NSL that included a nondisclosure certification specific written notice that the recipient can notify the FBI if the recipient wishes to be released from its nondisclosure obligation and to have the FBI initiate a court proceeding to justify the nondisclosure certification. The computer system used to generate NSLs, more fully described below, automatically includes this language for all NSLs that have nondisclosure provisions.

18.    Specifically, the FBI includes the following text, or text that is substantially similar, in every NSL containing nondisclosure certifications, including the NSL served on respondent:

> You also have the right to challenge the nondisclosure requirement set forth above. If you wish to make a disclosure that is prohibited by the nondisclosure requirement, you must notify the FBI, in writing, of your desire to do so within 10 calendar days of receipt of this letter. That notice must be mailed or faxed to the XXXXX Division, attention: XXXX XXXXX (phone number: XXX-XXX-XXXX), with a copy to FBI HQ, attention: General Counsel (fax number: XXX-XXX-XXXX) and must reference the date of the NSL and the identification number found on the upper left corner of the NSL. If you send notice within 10 calendar days, the FBI will initiate judicial proceedings in approximately 30 days in order to demonstrate to a federal judge the need for nondisclosure and to obtain a judicial order requiring continued nondisclosure. The nondisclosure requirement will remain in effect unless and until there is a final court order holding that disclosure is permitted.

19.     The FBI has developed an automated computer program--the NSL subsystem--through which the FBI generates standardized NSLs.  The NSL subsystem is part of the FBI's

[ (H) ] and functions as a workflow tool that standardizes NSLs.  Through this and other processes, the FBI ensures that it meets applicable legal and administrative requirements, including those set forth by the Second Circuit in Doe.

20.     The NSL subsystem automatically populates NSLs with the above-referenced text advising recipients of their right to challenge the NSLs' non-disclosure requirements.  By automating this process, the FBI is able to ensure that every NSL recipient receives appropriate notice of its rights and that the FBI complies with Doe's reciprocal notice requirements.

21.     The NSL subsystem also ensures and documents that NSLs and supporting documentation receive review and approval in accordance with FBI policy, including review by FBI legal counsel.  The FBI only prepares NSLs outside of the NSL subsystem in highly unusual circumstances such as, for example, sensitive intelligence investigations where a subject may have access to government databases.  But even in the rare case when such NSLs are used, they must include the language described above, if nondisclosure is sought.

22.     This NSL process has been publicly described.  On March 15, 2011, former Assistant Attorney General Ronald Weich forwarded to the U.S. House Judiciary Committee the FBI's written explanation of its reciprocal notice policy and of the functioning of the FBI's NSL subsystem.  This information was provided in response to questions for the record arising from a May 20, 2009, House Judiciary Committee hearing at which FBI Director Mueller testified.  In addition to explaining the NSL subsystem and providing the Committee with the standard,

automatically-generated text quoted above, these responses confirmed that, "[s]ince 2/10/09, the FBI has been including the reciprocal nondisclosure language in all types of NSLs, not just in NSLs issued pursuant to 18 U.S.C. § 2709." I have attached a copy of the portion of the FBI's response providing this information as Exhibit A.

23.      Attorney General Eric Holder further described the FBI's policy in a December 9, 2010 letter addressed to the Honorable Patrick Leahy, Chairman of the U.S. Senate Committee on the Judiciary. Specifically, Attorney General Holder stated that, "as of February 2009, all NSLs are required to include a notice that informs recipients of the opportunity to contest the nondisclosure requirement though the government initiated review. In most cases, this notice is automatically generated by the NSL subsystem."

24.      For the NSL at issue in this litigation, the FBI provided the notice discussed above, advising the respondent of its legal right to contest the NSL's nondisclosure requirement through government-initiated judicial review, pursuant to the standard operating procedure I have described. The respondent did not object to the nondisclosure requirement at that time.

25.      However, on March 24, 2015, the respondent, through counsel, advised the FBI that the respondent intended to file a petition pursuant to 18 U.S.C. 3511(b)(3) to set aside the non-disclosure provisions of the NSL. The respondent also inquired whether the government would take on the burden of initiating judicial review, as the government would have done if the respondent objected within the 10 days described in the NSL. The government informed respondent through counsel that it would assume the burden of initiating judicial review in this instance.

8

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___8th___ day of ___May___ 2015.

Donald Good
Acting Assistant Director
Cyber Division
Federal Bureau of Investigation
Washington, D.C.

**EXHIBIT A**



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

March 15, 2011

The Honorable Lamar Smith
Chairman
Committee on the Judiciary
United States House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

Enclosed please find responses to questions for the record arising from the appearance of FBI Director Robert Mueller before the Committee on May 20, 2009, at an oversight hearing. We apologize for the lengthy delay and hope that this information is of assistance to the Committee.

Please note that these responses are current as of August 19, 2009. The Office of Management and Budget has no objection to our submitting these responses to the Committee with that caveat. Please do not hesitate to call upon us if we may be of additional assistance.

Sincerely,

Ronald Weich
Assistant Attorney General

Enclosure

cc:    The Honorable John Conyers, Jr.
       Ranking Minority Member

      **b. Please provide the exact number of NSLs issued since December 15, 2008, broken down both by the number with and without a nondisclosure requirement and by the number with and without a notice of the right to challenge the nondisclosure requirement.**

**Response:**

      From 12/15/08 through 6/30/09, the FBI issued 8,509 NSLs. Of those NSLs, 8,338 contained nondisclosure language, while 171 did not. During the same period, 6,267 NSLs contained language notifying the recipient of a right to challenge the nondisclosure provision, while 2,242 did not. It should be noted that the FBI began including language regarding the right to challenge the nondisclosure provision on 2/10/09 and all 6,267 NSLs issued since that date have included this language. No challenges have been received to date.

      **c. Has the FBI provided this notice to recipients of NSLs in all jurisdictions, and not just to recipients in the Second Circuit? In the future, will the FBI be providing this notice to recipients of NSLs in all jurisdictions, and not just in the Second Circuit?**

**Response:**

      The FBI has been including this "challenge" notice in all NSLs containing a nondisclosure provision since 2/10/09, regardless of jurisdiction.

      **d. Has the FBI been providing this notice to all recipients of NSLs, and not just to recipients constrained by a nondisclosure requirement issued pursuant to 18 U.S.C. § 2709? In the future, will the FBI be providing this notice to all recipients of NSLs, and not just to recipients constrained by a nondisclosure requirement issued pursuant to 18 U.S.C. § 2709?**

**Response:**

      Since 2/10/09, the FBI has been including the reciprocal nondisclosure language in all types of NSLs, not just in NSLs issued pursuant to 18 U.S.C. § 2709.

      **e. Please provide a copy of the notice the FBI is sending to NSL recipients that informs them of their right to challenge the nondisclosure provision.**

**Response:**

*These responses are current as of 9/24/09.*

31