IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LORETTA E. LYNCH,

                Attorney General

    v.

UNDER SEAL

Case No. 15-CV-001180

FILED UNDER SEAL
PURSUANT TO
18 U.S.C. § 3511(d)

## RESPONDENT'S OPPOSITION TO PETITION TO ENFORCE NONDISCLOSURE PROVISION

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 2

BACKGROUND ........................................................................................... 3

A.     The National Security Letter Statutory Framework.................................... 3

B.     The Mukasey and In re National Security Letter Decisions ......................... 6

C.     The Attorney General's Modified Reporting Allowances............................ 9

D.     [ (G) ] Business and the NSL at Issue.................................................... 11

ARGUMENT ............................................................................................. 12

I.     Legal Standard ................................................................................ 12

II.     Section 2709(c) is Facially Invalid as an Unconstitutional Prior Restraint and as a Content-Based Restriction on Speech......................................... 13

        A.     NSL Nondisclosure Orders Constitute a Prior Restraint................. 13

        B.     The Statute Does Not Satisfy the Substantive Standards Governing Prior Restraint................................................................................. 16

        C.     Section 2709(c) is an Unconstitutional Content-Based Restriction on Speech ...................................................................................... 18

            1.  A nondisclosure order in an NSL imposes a content-based restriction............................................................................. 18

            2. The statute does not satisfy strict scrutiny.................................. 18

III.     The Judicial Review Standards of the Nondisclosure Requirement in 18 U.S.C. § 3511(b) Violate Separation of Powers....................................................21

IV.     The Statute is Unconstitutional as Applied to [ (G) ] Even if the Purported Mukasey Narrowing Provisions are Used) ............................................... 23

CONCLUSION ......................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Alexander* v. *United States,*
    509 U.S. 544 (1993) ............................................................... 13

*Bantam Books, Inc.* v. *Sullivan,*
    372 U.S. 58, (1963) ............................................................... 16

*Boumediene v. Bush,*
    553 U.S. 723 (2008) ............................................................... 22

*Brown v. Entm't Merchs. Ass'n,*
    131 S. Ct. 2729 (2011) ............................................................ 19

*Butterworth v. Smith,*
    494 U.S. 624 (1990) ............................................................... 4

*Carey v. Brown,*
    447 U.S. 455 (1980) ............................................................... 18

*Commodity Futures Trading Com. v. Schor,*
    478 U.S. 833 (1986) ............................................................... 23

*Cooper v. Dillon,*
    403 F.3d 1208 (11th Cir. 2005) .............................................. 14

*Doe v. Ashcroft,*
    334 F. Supp. 2d 471 (S.D.N.Y. 2004) ..................................... 5

*Doe v. Gonzales,*
    500 F. Supp. 2d 379 (S.D.N.Y. 2007) ..................................... 20

*Freedman v. State of Md.,*
    380 U.S. 51 (1965) ................................................................. 6-7

*Educ. Media Co. at Virginia Tech, Inc. v. Insley,*
    731 F.3d 291 (4th Cir. 2013) ................................................. 13

*Educ. Media Co. at Virginia Tech v. Swecker,*
    602 F.3d 583 (4th Cir. 2010) ................................................. 12-13

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of*
    *Baltimore,* 721 F.3d 264 (4th Cir. 2013) ................................. 12

*In re Application and Affidavit for a Search Warrant,*
    923 F.2d 324 (4th Cir. 1991) ................................................. 3

*In re Nat'l Sec. Letter,*
    930 F.Supp.2d 1064 (N.D. Cal. 2013) ........................................................ *passim*

*John Doe, Inc. v. Mukasey,*
    549 F.3d 861 (2d Cir. 2008) ..................................................................... *passim*

*Landmark Commc'ns, Inc. v. Virginia,*
    435 U.S. 829 (1978) ...................................................................................... 14

*Loving v. United States,*
    517 U.S. 748 (1996) ...................................................................................... 23

*Miller v. French,*
    530 U.S. 327 (2000) ...................................................................................... 21

*Mistretta v. United States,*
    488 U.S. 361 (1989) ...................................................................................... 22

*NAACP v. Button,*
    371 U.S. 415 (1963) ...................................................................................... 20

*Near v. State of Minnesota ex rel. Olson,*
    283 U.S. 697 (1931) ...................................................................................... 16

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) ................................................................................... 16-17

*New York Times Co. v. United States,*
    403 U.S. 713 (1971) ...................................................................................... 17

*Nixon v. Warner Communications, Inc.,*
    435 U.S. 589 (1978) ........................................................................................ 3

*Reno v. ACLU,*
    521 U.S. 844 (1997) ...................................................................................... 19

*Richmond Med. Ctr. for Women v. Herring,*
    570 F.3d 165 (4th Cir. 2009) ........................................................................ 13

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984) ........................................................................................ 15

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546 (1975) ...................................................................................... 14

*Speiser v. Randall,*
    357 U.S. 513 (1958) ........................................................................................ 8

*United States v. Klein,*
    80 U.S. 128 (1871) ............................................................ 23

*United States v. Marchetti,*
    466 F.2d 1309 (1972) ...................................................... 17-18

*United States v. Moussaoui,*
    382 F.3d 453 (4th Cir. 2004) ........................................... 23

*United States v. Playboy Entm't Grp., Inc.,*
    529 U.S. 803, 818 (2000) ................................................. 19

*United States v. Stevens,*
    559 U.S. 460 (2010) ......................................................... 12

*Virginia Dep't. of State Police v. Washington Post,*
    386 F.3d 567 (4th Cir. 2004) ........................................... 3

*Zurich Am. Ins. Co. v. Rite Aid Corp.,*
    345 F. Supp. 2d 497 (E.D. Pa. 2004) ............................... 3

**Statutes**

18 U.S.C. § 2709.................................................................... *passim*

18 U.S.C. § 3511.................................................................... *passim*

**Other**

*Black's Law Dictionary* (9th ed. 2009) ................................ 20

*Congress Turns Away From Post-9/11 Law, Retooling U.S. Surveillance Powers,*
    Washington Post, June 2, 2015 ....................................... 16

Letter from James Cole, Deputy Att'y General, Wash. D.C. to Colin Stretch,
    Vice President and General Counsel, Facebook, *et al.* (Jan. 27, 2014)
    (on file with the Federation of American Scientists) ...................... 10

Letter re: Requests for Information Under the Electronic Communications Privacy Act,
    Nov. 5, 2008 ("2008 OLC Letter") ............................................. 11

Liberty and Security in a Changing World: Report and Recommendations
    from the President's Review Group on Intelligence and Communications
    Technologies, 91-93 (2013) ..................................................... 5, 25

*The Gaping Hole in Obama's FBI Surveillance Reform,*
    Huffington Post, Feb. 4, 2015......................................... 16

*Microsoft, Facebook, Google and Yahoo Release US Surveillance Requests,*
     The Guardian (Feb. 3, 2014) ......................................................................   10


Office of the Director of National Intelligence, IC on the Record ...............................   8

## PRELIMINARY STATEMENT

By this action, [ (G) ] is challenging the continued application of the gag order provision contained in 18 U.S.C. § 2709(c), which prevents it from disclosing information about a National Security Letter ("NSL") it received from the government over [ (G) ] Not only does the government contend that the statute prevents [ (G) ] from providing notice to the account-holder targeted in the NSL, but the government would have the Court interpret Section 2709(c) as prohibiting [ (G) ] from even acknowledging that it received an NSL during the 12-month time period in which the letter was received.

[ (G) ] is challenging the constitutionality of the application of the gag order both on a facial and as-applied basis, both with regard to its ability to inform the target of the NSL and its ability to generally acknowledge receipt of the NSL.   Facially, Section 2709(c) is unconstitutional because it is an indefensible prior restraint on speech, impermissibly restricts judicial review of [ (G) ] challenge to the need for the gag order, and violates the separation of powers doctrine.   Indeed, two courts that have confronted the constitutionality of Section 2709(c) have found the provision unconstitutional as written.   This Court should do so as well.

On an as-applied basis, the government likely has not made a sufficient showing to prevent [ (G) ] from disclosing the information in the NSL[1] but certainly has not demonstrated what is needed under any standard of review to require [ (G) ] to hide the mere fact of receipt

---

[1] [ (G) ] believes as a matter of policy that service providers should be able to, when appropriate, disclose to a customer who is the target of the NSL that the provider received and complied with an NSL regarding the customer. Here, any government claims regarding the harms of such disclosure were made in the Classified Declaration of Donald Good, which [ (G) ] does not have access to. Thus [ (G) ] is not able in this particular situation to take a position regarding whether there is a "good reason," or any reason for that matter, to believe that disclosing the existence of the NSL to the target would result in one of the harms enumerated in the statute. [ (G) ] also believes it is entitled to know more about the basis asserted in the classified declaration given the clearance level of its counsel.

1



of the NSL.  The government has failed to show that it would cause serious damage to national security if (G) —a company with more than (G) registered users—disclosed that it received (G) In fact, under the Department of Justice's ("DOJ") own reporting guidelines, the DOJ has essentially conceded that an entity reporting that it has received (G) (G) causes no harm.

In light of the unconstitutionality of the statute, as already determined by two prior courts, and in light of the insufficient showing made by the government in the instant case, (G) should not be restrained from disclosing the information in the NSL served in this case and certainly not from acknowledging the mere receipt of that NSL.[2]

## BACKGROUND

### A.    The National Security Letter Statutory Framework

The statute under which the government issued the NSL to (G) —18 U.S.C. § 2709—grants sweeping powers to the FBI.  First, Sections 2709(a) and (b) together allow the FBI to, without any prior judicial authorization or review, compel electronic communication

---

[2] (G) does not believe that this dispute should be litigated before this Court in secret.  Rather, given the ongoing active public debate about the appropriate balance between transparency and law enforcement's interest in conducting secret investigations, the briefing in this matter should be unsealed, with appropriate redactions to conceal the name of the service provider at issue and any details regarding the specific NSL at issue.  As the Fourth Circuit has acknowledged, the public has an "understandable interest in law enforcement systems and how well they work" and "legitimate concerns about methods and techniques of police investigation."  *In re Application and Affidavit for a Search Warrant,* 923 F.2d 324, 331 (4th Cir. 1991).  Blanket assertions of the need to maintain secrecy to ensure the success of an ongoing investigation cannot justify litigating this matter entirely under seal.  *See Virginia Dep't. of State Police v. Washington Post,* 386 F.3d 567, 579 (4th Cir. 2004) ("[N]ot every release of information contained in an ongoing criminal investigation will necessarily affect the integrity of the investigation.").  (G) s prepared to bring a motion to initiate the unsealing process if necessary, although the Court can also do so on its own initiative.  *See, e.g., Id.* at 575 (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598-99 (1978)) (noting "the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and . . . discretion").  *See also Zurich Am. Ins. Co. v. Rite Aid Corp.,* 345 F. Supp. 2d 497, 506 (E.D. Pa. 2004) ("The law is clear that it is within the Court's discretion, *sua sponte,* to unseal the record.").

service providers such as [ (G) ] to provide customer records[3] if the FBI believes that such information is "relevant" to an authorized investigation to protect against international terrorism or clandestine intelligence activities.  Second, Section 2709(c) provides that upon a certification from the Director of the FBI, the recipient of an NSL cannot disclose to any person "that the [FBI] has sought or obtained access to information or records under this section."  Thus, not only can the FBI prohibit an NSL recipient from disclosing the NSL to the customer whose information the government requested, the recipient cannot even disclose that it received an NSL at all.  And as long as the FBI certifies that nondisclosure is "necessary," the prohibition extends indefinitely absent any action on the part of the service provider.

The FBI can—and with alarming regularity does—serve on providers NSLs containing blanket prohibitions on the disclosure of their existence.  At least as of 2007, 97 percent of the more than 200,000 NSLs issued by the government were issued with nondisclosure orders.  *In re Nat'l Sec. Letter*, 930 F.Supp.2d 1064, 1074 (N.D. Cal. 2013).  Such NSLs are not subject to any court oversight at all unless and until the NSL recipient petitions a district court to review the NSL or its nondisclosure requirement.  The secrecy required by the NSL statute is not "analogous to [] grand jury and other investigatory nondisclosure provisions" as the government suggests.  *See* Gov't Mem. of Law in Support of Petition to Enforce Nondisclosure Provision ("Mem.") at 15.  For example, a grand jury witness can only be prevented from communicating information he or she learned "as a result of his participation in the proceedings of the grand jury."  *Butterworth v. Smith*, 494 U.S. 624, 632 (1990).  He or she cannot be gagged from disclosing the fact of her subpoena or testimony.  *Id.* at 636-37.

---

[3] The FBI may only request name, address, length of service, and long distance toll billing records under Section 2709, and cannot demand electronic communication transactional records. *See* Letter re: Requests for Information Under the Electronic Communications Privacy Act, Nov. 5, 2008 ("2008 OLC Letter") at 2-3.

The secrecy requirements in the NSL statute are also unlike confidentiality requirements in civil discovery where a party *voluntarily* seeks out information, and as a condition of receiving it *agrees* to keep the information confidential.

Put simply, NSL statutes are unique in that the executive branch can self-issue both demands for customer information and accompanying nondisclosure requirements without any prior judicial involvement or opportunity for the ultimate target of an investigation to contest the underlying information request. NSLs are also unique because unlike other forms of legal process, they are not issued in connection with an ongoing criminal proceeding. Thus, absent action by a service provider recipient, NSLs may never be subject to any scrutiny in the way that grand jury subpoenas, warrants, or other orders seeking evidence for prosecution are. As one district court explained, "NSLs such as the ones authorized by § 2709 provide fewer procedural protections to the recipient than any other information-gathering technique the Government employs to procure [similar] information. . . ." *Doe v. Ashcroft*, 334 F. Supp. 2d 471, 484-491 (S.D.N.Y.2004) (describing the differences between NSLs and other processes), *vacated sub nom. Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006). *See also* Liberty and Security in a Changing World: Report and Recommendations from the President's Review Group on Intelligence and Communications Technologies 91-93 (2013) (noting that other investigative tools have independent judicial checks and/or allow a target to challenge them in court). [4]

Even where a service provider does undertake to seek judicial review of an NSL or its nondisclosure requirement, that review is unconstitutionally limited by statute. The only mechanism for judicial review of NSLs and any accompanying nondisclosure orders is 18 U.S.C.

---

[4] *Available at* http://www.whitehouse.gov/sites/default/files/docs/ 2013-12—12_rg_final_ report.pdf.

§ 3511. Under that statue, a court may only modify or set aside an NSL "if compliance would be unreasonable, oppressive, or otherwise unlawful." 18 U.S.C. § 3511(a).

Judicial review of the nondisclosure provision is even more curtailed. If, like here, the NSL is ☐(G)☐ old, a specified government official need only re-certify that disclosure *may* result in "a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." 18 U.S.C. § 3511(b)(3). If the government provides such certification, the court can only alter or modify the NSL's nondisclosure requirement if there is "no reason to believe that disclosure may" have the impact the government says it may, and the court must treat the certification as "conclusive unless the court finds that the recertification was made in bad faith." *Id.*

**B.      The *Mukasey* and *In re National Security Letter* Decisions**

Two courts have found the NSL statute, and particularly the nondisclosure provision in Section 2709(c), to be unconstitutional as written. The Second Circuit in *John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008), found the plain language of the statute unconstitutional but interpreted the statute in a way that purportedly saved the statute constitutionally. The other court, the Northern District of California in *In re National Security Letter*, struck the statute down because it violated the First Amendment. *In re Nat'l Sec. Letter*, 930 F.Supp.2d at 1081.

In *Mukasey*, the Second Circuit concluded that while Section 2709(c) may not be a "classic prior restraint" or a "typical" content-based restriction on speech, its nondisclosure provision clearly restrained speech of a particular content—significantly, speech about government conduct. *Mukasey*, 549 F.3d, at 877-8. It also found that application of the procedural safeguards announced in *Freedman v. State of Md.*, 380 U.S. 51 (1965), particularly

5

the third *Freedman* prong requiring the government to initiate judicial review, was necessary. *Mukasey*, 549 F.3d at 881 ("in the absence of Government-initiated judicial review, subsection 3511(b) is not narrowly tailored to conform to First Amendment procedural standards.")[5]

The Second Circuit concluded that as written, the statute failed to satisfy *Freedman's* procedural safeguards. But to avoid constitutional deficiencies, the Court read into the statute various requirements that do not exist anywhere in the statute's text. For example, the Second Circuit added a requirement that the government inform NSL recipients they could contest the nondisclosure requirements and if contested, the government would initiate judicial review within 30 days, and that the review could conclude within 60 days. *Mukasey*, 549 F.3d at 879, 883-884.[6]

With respect to the district court's ability to review the adequacy of the FBI's justification for nondisclosure, the Second Circuit adopted three concessions by the government that allegedly narrowed the limitations on judicial review. First, the Second Circuit accepted the government's litigation position that the nondisclosure requirement applies *only* if the FBI certifies that an enumerated harm related to an authorized investigation to protect against international terrorism or clandestine intelligence activity may occur. *Id.* 875.   Second, it accepted the government's position that Section 3511(b)(2) should be read to mean that a court may alter or modify the nondisclosure agreement unless there is "some reasonable likelihood" that the enumerated harm will occur.  *Id.* at 874.  Third, the court accepted the government's agreement that it would bear the burden of proof to persuade a district court that there is a good

---

[5] The procedures required by *Freedman* are that (1) any restraint imposed prior to judicial review must be limited to a specified brief period; (2) any restraint prior to final judicial determination must be limited to the shortest fixed period compatible with sound judicial restraint; and (3) the burden of going to court to suppress speech and the burden of proof must be placed on the government. *Freedman*, 380 U.S. at 58-59.

[6] This process was followed in this case. ░░░(G)░░░ is therefore not challenging the NSL on this ground.

reason to believe that disclosure may risk one of the enumerated harms; and that the district court must find that such a good reason exists. *Id.* at 875–76. The Second Circuit affirmed, however, the district court's holding that Section 3511(b)(2) and (b)(3)'s provision that government certifications must be treated as "conclusive" is not "meaningful judicial review" under the First Amendment, and read that language out of the statute. *Id.* at 882.

Five years after the Second Circuit's ruling in *Mukasey*, the *In re National Security Letter*, court likewise concluded that Sections 2709(c) and 3511(b) were unconstitutional. The court found that the nondisclosure provisions were not narrowly tailored to serve the compelling government interest without unduly burdening speech. *In re Nat'l Sec. Letter*, 930 F.Supp.2d at 1075. The court reasoned that "the pervasive use of nondisclosure orders, coupled with the government's failure to demonstrate that a blanket prohibition on recipients' ability to disclose the mere fact of receipt of an NSL is necessary to serve the compelling need of national security, creates too large a danger that speech is being unnecessarily restricted." *Id.* at 1076 (*citing Speiser v. Randall*, 357 U.S. 513, 525 (1958) ("[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn.... The separation of legitimate from illegitimate speech calls for more sensitive tools ....")). The court also found that "[i]n addition to the breadth of the non-disclosure provision, the Court is concerned about its duration. Nothing in the statute requires, or even allows the government to rescind the non-disclosure order once the impetus for it has passed." *In re Nat'l Sec. Letter*, 930 F.Supp.2d at 1076.

The *In re National Security Letter* court also concluded that the way in which the statute "circumscribe[d]" a court's ability to modify or set aside nondisclosure NSLs—only if it found that there was no reason to believe that a harm may result—was "incompatible with the court's

duty to searchingly test restrictions on speech." *Id.* at 1077-78. Finally, the court "agree[d] with the Second Circuit that the statute's direction that courts treat the government's certification as 'conclusive' is likewise unconstitutional." *Id.* at 1078.

In finding the NSL statute unconstitutional, the Northern District of California expressly rejected the Second Circuit's "narrowing" constructions of the statute in *Mukasey*. Specifically, the court explained that "even if the FBI is in fact complying with both the procedural and substantive requirements imposed by the Second Circuit for all NSLs issued, the fact that the statute is facially deficient . . . presents too great a risk of potential infringement of First Amendment rights to allow the FBI to side-step constitutional review by relying on its voluntary, nationwide compliance with the Second Circuit's limitations." *Id.* at 1074 (internal citations omitted). The Northern District of California thus enjoined the government from issuing NSLs under Section 2709 or from enforcing the nondisclosure provision in the case before it or any other case. *Id.* at 1081. The District Court stayed enforcement of its judgment, however, pending appeal. The matter is currently on appeal to the Ninth Circuit.

## C.     The Attorney General's Modified Reporting Allowances

In addition to the *Mukasey* and *National Security Letter* cases, providers have challenged the restrictions on speech posed by various forms of national security process with similar nondisclosure provisions in the Foreign Intelligence Surveillance Court ("FISC"). Specifically, in June 2013 Google instituted a FISC action seeking a declaratory judgment that it had a First Amendment right to publish the total number of requests it receives under various national security authorities and the total number of users or accounts encompassed within such requests. *See* Motion For Declaratory Judgment Of Google's First Amendment Right To Publish Aggregate Information About FISA Orders, June 18, 2013, Docket No. Misc. 13-03. Similar

actions were subsequently filed by Microsoft, Facebook, Yahoo!, and LinkedIn, and consolidated in a single proceeding.[7]

Rather than fully litigating the issue, the government offered a modest change in its interpretation of the nondisclosure provisions accompanying these forms of process. Specifically, on January 27, 2014, Deputy Attorney General James Cole issued a letter outlining certain "additional ways in which the government will permit [companies] to report data concerning requests for customer information." *See* Letter from James Cole, Deputy Att'y General, Wash. D.C. to Colin Stretch, Vice President and General Counsel, Facebook, et al. (Jan. 27, 2014) (on file with the Federation of American Scientists).[8]  Under these new guidelines, the government will not seek to enforce various nondisclosure provisions where providers report in separate categories "the number of NSLs received, reported in bands of 1000 starting with 0-999." *Id.* at 2.

Even after this change, however, a provider that has never received an NSL can still report it has never received an NSL because the non-disclosure requirements under Section 2709(c) only apply once a provider first receives an NSL.  But a provider that receives one NSL can only report that it has received between 0-999 NSLs.  And a provider who receives 1,200 NSLs can acknowledge receiving between 1,000 and 1,999 NSLs.  *Id.*  The new guidelines also give providers the option of reporting in bands of 250, "the total number of all national security process received, including all NSLs and FISA orders, reported as a single number." *Id.* at 3. The guidelines still seek to prohibit providers from disclosing the precise number of surveillance requests they received.  But they undermine any argument that for a provider to acknowledge

---

[7] *See Microsoft, Facebook, Google and Yahoo Release US Surveillance Requests,* The Guardian (Feb. 3, 2014) http://www.theguardian.com/world/2014/feb/03/microsoft-facebook-google-yahoo-fisa-surveillance-requests.

[8] *Available at* Available at http://fas.org/irp/news/2014/01/dag-012714.pdf.

that some process has been received automatically harms national security.

**D.**     **Business and the NSL at Issue**

(G) licenses and operates (G) (G) to provide users with (G) (G) (the (G) Service"). *See* Declaration of (G) ¶ 3. The (G) allows users to (G) *Id.* ¶ 4. Users can (G) (G) *Id.* (G) (G) *Id.* ¶ 5. Currently, (G) has more than (G) registered users. *Id* ¶ 6.

On (G) the FBI issued an NSL to (G) which the FBI served on (G) *See* Ex. A to (G) The NSL demanded the names, addresses, length of service, and electronic communications transactional records[9] for the account in question. *Id.* In addition, the NSL informed (G) that "a disclosure of the fact that the FBI has sought or obtained access to the information sought by this letter may endanger the national security of the United States and thus prohibited (G) from "disclosing this letter, other than to those to whom disclosure is necessary to comply with the letter" or to an attorney. *Id.* at 2.

(G) complied with the lawful demands contained within the NSL. Specifically, on (G) (G) provided to the FBI the (G) record for the accounts

---

[9] This demand was included notwithstanding the fact that 18 U.S.C. § 2709 does not authorize the FBI to seek electronic communication transactional records. *See* 2008 OLC Letter at 2-3.

in question  ¶ 8.   (G)   did not disclose either the fact that it received the NSL or the information requested by the NSL to anyone (other than its attorneys).

*Id.* ¶ 9. On March 24, 2015—

NSL was issued—   (G)   contacted the FBI to determine whether, given the age of the NSL and the passage of time, the non-disclosure provision was still needed. *See* Mem. at 7. The FBI responded that the justifications for the non-disclosure provisions in the NSL continued to be valid, taking the position that not only could   (G)   not inform the target of the NSL about the letter's existence,   (G)   could not even disclose the fact that it received the NSL. *Id.* The government subsequently initiated the instant action.

## ARGUMENT

### I.      Legal Standard

  (G)   challenges the constitutionality of the application of the gag order facially and on an as-applied basis. Under a facial challenge, a plaintiff may sustain its burden in one of two ways. First, a party asserting a facial challenge "may demonstrate 'that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep.'" *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (alterations omitted) (quoting *United States v. Stevens*, 559 U.S. 460 (2010)). Second, a party asserting a facial challenge may also prevail if he or she "show[s] that the law is 'overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* Under either scenario, a court considering a facial challenge is to assess the constitutionality of the challenged law "without regard to its impact on the [party] asserting the facial challenge." *Educ. Media Co.*

*at Virginia Tech v. Swecker*, 602 F.3d 583, 588 (4th Cir. 2010). Here, Section 2709(c) is facially unconstitutional because it is an improper prior restraint and content-based restriction of speech. Section 3511(b) is also facially unconstitutional because the unduly deferential standard of review it imposes violates the separation of powers doctrine. Two courts—the Second Circuit in *Mukasey* and the Northern District of California in *In re National Security Letter*—have already found these provisions facially unconstitutional as written.

An as-applied challenge is based on "the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir.2009) (en banc). *See also Educ. Media Co. at Virginia Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir.2013). In an as-applied challenge, "the state must justify the challenged regulation with regard to its impact on the plaintiffs." *Id.* at 298. Here, regardless of what standard is used, the government cannot justify prohibiting ⬚ (G) ⬚ from disclosing its receipt of an NSL. More specifically, even if the statute is constitutional under certain circumstances, the government has not met its burden to demonstrate that the potential harms caused by the disclosure of the receipt of the NSL justify the restraint on ⬚ (G) ⬚ speech.

## II.   Section 2709(c) is Facially Invalid as an Unconstitutional Prior Restraint and as a Content-Based Restriction on Speech

### A.   NSL Nondisclosure Orders Constitute a Prior Restraint

The NSL statute's provision authorizing the government to prevent NSL recipients from disclosing the fact that they have received an NSL or anything about their interaction with the government is a prior restraint. In *Alexander v. United States*, 509 U.S. 544 (1993), the Supreme Court explained that "[t]he term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such

communications are to occur." *Id.* at 550 (emphasis and internal quotation marks omitted). Section 2709(c) provides for just such administrative orders.

Specifically, the statute authorizes the FBI to prohibit the recipient of an NSL from "disclos[ing] to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request) that the [FBI] has sought or obtained access to information or records" by means of an NSL. 18 U.S.C. § 2709(c)(1). A party who receives such an NSL containing a nondisclosure order and wishes to speak about it must litigate the validity of the order prior to speaking. 18 U.S.C. § 3511(b)(1). Yet, the prior-restraint doctrine recognizes that "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand," *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 559 (1975). Section 2709(c) does the exact opposite.

The government argues that the NSL's nondisclosure provision is not a prior restraint (or at least a "classic" prior restraint) because it allegedly "restricts limited information obtained only by participation in a confidential investigation." Mem. at 16. As support for this position, the government points to *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838-839 (1978) and *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005). The statutes in those cases, however, are unlike Section 2709(c). If anything, those cases confirm that NSL nondisclosure provisions are prior restraints.

The statute at issue in *Cooper* made it a misdemeanor for a participant in an internal investigation of a law enforcement officer to disclose information obtained pursuant to that investigation before it became public record. *Cooper*, 403 F.3d at 1211. The court found that such statute was not a prior restraint, but only because "the threat of criminal sanctions [was]

13

imposed after publication" of the information. *Id.* at 1215-16. In doing so, the court expressly explained "[t]hat Florida's statutory scheme was not a prior restraint is underscored by the fact that Cooper was able to publish the information he obtained pursuant to the FDLE investigation without first having to obtain a government-issued license or challenge a government-imposed injunction." *Id.* at 1216. The opposite is the case here, where [ (G) ] must either obtain government permission or challenge the government's injunction in federal court prior to disclosing the mere fact that it received an NSL. The NSL statute is therefore unlike the statute in *Cooper* that "did not silence Cooper before he could speak." *Id.*

Likewise, *Landmark* involved the constitutionality of a statute imposing criminal sanctions for divulging information regarding proceedings before a state judicial review commission authorized to hear complaints as to a judge's disability or misconduct. *Landmark*, 435 U.S., at 830. Again unlike here, "the issue was not one of prior restraint but instead involved a sanction subsequent to restraint." *Id.* at 833. In fact, the appellant in that case did not even allege that the statute constituted a prior restraint. *Id.* at 838.

Equally unavailing is the government's argument that Section 2709(c) does not constitute a prior restraint because the prohibition on disclosure is allegedly "confined to sensitive information that the NSL recipient learns only by his involvement in the government's own investigation." Mem. at 18. As an initial matter, the fact that [ (G) ] received [ (G) ] among its over [ (G) ] registered users is not "sensitive information." But even putting that aside, the precedent the government cites is inapplicable. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), for example, the Supreme Court held that, as a condition of obtaining access to information through civil discovery, a party may be subjected to a protective order requiring that it preserve the confidentiality of that information. That case, however, involved a party that

voluntarily sought out the information at issue and to obtain it accepted limitations on its speech. NSL recipients, on the other hand, have not asked to be sent NSLs. That distinction is critical to the First Amendment analysis: It is one thing to say that a party seeking access to confidential information can be prohibited from disclosing that information, another to say that the government may impose a gag order on a party where it has demanded that the party assist in an investigation.

Finally, the government claims that Section 2709(c) does not constitute a prior restraint because it is limited "to a narrow category of information that is not characteristically political." Mem. at 19. But the speech at issue here is core "political" speech. The question of the extent to which the government can conduct investigations into United States citizens without any oversight or prior approval from the court, and the means by which the government can compel recipients of NSLs to participate in those investigations without the ability to disclose such participation either to the target of the NSL or to the public, is highly political and currently the subject of robust public debate.[10]

**B.     The Statute Does Not Satisfy the Substantive Standards Governing Prior Restraint**

"Any system of prior restraints of expression" is subject to "a heavy presumption against its constitutional validity." *Bantam Books, Inc.* v. *Sullivan*, 372 U.S. 58, 70 (1963); *see Near* v. *State of Minnesota ex rel. Olson*, 283 U.S. 697, 721 (1931). That is, it must be necessary to further a governmental interest of the highest magnitude. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976). A prior restraint is necessary only if:  (1) the harm to the governmental interest will definitely occur; (2) the harm will be irreparable; (3) no alternative

---

[10] *See e.g.*, *The Gaping Hole in Obama's FBI Surveillance Reform*, Huffington Post, Feb. 4, 2015; *Congress Turns Away From Post-9/11 Law, Retooling U.S. Surveillance Powers*, Washington Post, June 2, 2015 (discussing USA Freedom Act's rejection of "some of the sweeping intelligence-gathering powers [] granted national security officials after the 9/11 terrorist attacks.").

exists for preventing the harm; and (4) the prior restraint will actually prevent the harm. *See id.* As explained more fully below, the statutory standard governing the issuance of a nondisclosure order—that disclosure "may result" in various specified harms, 18 U.S.C. § 2709(c)(1)—is too low to satisfy ordinary strict scrutiny. It therefore does not meet the "necessary" standard sufficient to justify a prior restraint. *See New York Times Co. v. United States*, 403 U.S. 713, 730 (1971) (Stewart, J., concurring) (reversing injunction against publication of the Pentagon Papers because "I cannot say that disclosure of any of them will *surely* result in direct, immediate, and irreparable damage to our Nation or its people") (emphasis added). And even if that were not the case, the government cannot meet its burden to show that any harm would come to the government from [ (G) ] disclosing that it received [ (G) ] out of over [ (G) ] users, let alone that such alleged harm is irreparable or that restraining [ (G) ] from speaking is the only alternative to prevent the harm.

The government incorrectly argues that the NSL gag provision satisfies heightened strict scrutiny because it is "consistent" with a prior restraint on publication of national security information that the Fourth Circuit previously upheld. Mem. at 23 (*citing United States v. Marchetti*, 466 F.2d 1309 (1972)). In *Marchetti*, the United States sought to enjoin a former CIA employee from publishing a book containing classified information without first allowing the CIA to review that information. Mem. at 23-4. But the issue in *Marchetti* was the "enforceability of a secrecy agreement exacted by the government in its capacity as employer, from an employee of the Central Intelligence Agency." *Marchetti*, 466 F.2d at 1311. The court specifically found that the government's need for secrecy in national security "len[t] justification to a system of prior restraint against disclosure *by employees and former employees of classified information obtained during the course of employment*." *Id.* at 1316-17 (emphasis added). In

16

doing so, the court reasoned that "Marchetti, of course, could have refused to sign, but then he would not have been employed, and he would not have been given access to the classified information he may now want to broadcast." *Id.* at 1316. Thus, *Marchetti* is no different from *Seattle Times*. In both, the party subject to a prior restraint voluntarily sought access to confidential information: In *Seattle Times* the recipient sent a subpoena and in *Marchetti* the recipient sought employment. But here [    (G)    ] did not seek out the NSL. And it did not obtain knowledge about the existence of the NSL during the course of employment or sign any agreements with the government agreeing not to disclose that it received an NSL.

**C.      Section 2709(c) is an Unconstitutional Content-Based Restriction on Speech**

**1.      A nondisclosure order in an NSL imposes a content-based restriction**

The government does not appear to dispute that Section 2709(c) imposes a content-based restriction on speech. Nor can it. Section 2709(c)'s restriction is content based because it prohibits an NSL recipient from disclosing "that the Federal Bureau of Investigation has sought or obtained access to information or records." 18 U.S.C. § 2709(c). Determining whether speech by the recipient falls within the statute's prohibition requires examining the content of that speech. If the speech is about the fact "that the Federal Bureau of Investigation has sought or obtained access to information or records," it is unlawful; if it is about something else, it is not. In other words, the applicability of the prohibition turns on the content of the speech. Because "it is the content of the speech that determines whether it is within or without the statute's blunt prohibition," the statute is content-based. *Carey v. Brown*, 447 U.S. 455, 462 (1980).

**2.      The statute does not satisfy strict scrutiny**

As a content-based restriction on speech, Section 2709(c) fails the required strict scrutiny analysis. Content-based speech restrictions are invalid unless the government "can demonstrate

that it passes strict scrutiny—that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011).  There is no dispute that the government has a compelling interest in protecting national security.  Section 2709(c), however, is not narrowly tailored to promote that interest. The narrow-tailoring component of the test requires the government to show that there are no "less restrictive alternatives [that] would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve." *Reno v. ACLU*, 521 U.S. 844, 874 (1997).  Under the strict-scrutiny standard, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 818 (2000).

The government cannot make the required showing with respect to Section 2709(c).  The district court in *In re National Security Letter* found that Section 2709(c) failed strict scrutiny for multiple reasons.  First, it found that the provision was over-inclusive because it allowed the FBI to gag recipients about not only the content of the NSL but also as "to the very fact of having received one." *In re Nat'l Sec. Letter*, 930 F. Supp. 2d at 1075.  Specifically, the court noted:

> [T]he government has not shown that it is generally necessary to prohibit recipients from disclosing the mere fact of their receipt of NSLs. The statute does not distinguish-or allow the FBI to distinguish-between a prohibition on disclosing mere receipt of an NSL and disclosing the underlying contents.  The statute contains a blanket prohibition: when the FBI provides the required certification, recipients cannot publicly disclose the receipt of an NSL.

*Id.* at 1076.  Second, it found the gag provision over-inclusive because it imposed prior restraints of unlimited duration.  Specifically, the district court held that "[b]y their structure . . . the review provisions are overbroad because they ensure that nondisclosure continues longer than necessary to serve the national security interests at stake." *Id. See also Doe v.*

*Gonzales*, 500 F. Supp. 2d 379, 421 (S.D.N.Y. 2007).

In addition to the reasons identified in *In re National Security Letter*, the gag provision is not narrowly tailored for two additional reasons. First, the statute is satisfied whenever the FBI director says that the specified harms "may" occur. That imposes hardly any limit at all, as the word "may" requires only a mere possibility. *See Black's Law Dictionary* 1068 (9th ed. 2009) (defining "may" as "[t]o be a possibility"). Narrow tailoring requires more. *See Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (holding that narrow tailoring is satisfied "only if each activity within the proscription's scope is an appropriately targeted evil"); *NAACP v. Button*, 371 U.S. 415, 438 (1963) (stating that "[b]road prophylactic rules in the area of free expression are suspect."). Second, the enumerated harms in the statute cover more than national security harms. For example, "interference with a criminal . . . investigation" could refer to even minor interference with an investigation of a misdemeanor offense having nothing to do with national security. Similarly, as the Second Circuit observed in *Mukasey*, the "danger to the . . . physical safety of any person" clause "could extend the Government's power to impose secrecy to a broad range of information relevant to such matters as ordinary tortious conduct." *Mukasey*, 549 F.3d at 874.

Having correctly identified the constitutional deficiencies in Section 2709(c)'s broad language, the court in *Mukasey* mistakenly concluded that they could be avoided by reading the statute to require that there be "an adequate demonstration that a good reason exists reasonably to apprehend a risk of an enumerated harm," *id.* at 882, and that the harm be "related to 'an authorized investigation to protect against international terrorism or clandestine intelligence activities.'" *Id.* at 875 (*quoting* 18 U.S.C. § 2709(b)). Although that reading may mitigate the First Amendment problems to some degree, it cannot be reconciled with the statutory text and is

thus improper. As the *In re National Security Letter* court explained, "even if the FBI is in fact complying with both the procedural and substantive requirements imposed by the Second Circuit for all NSLs issued, the fact that the statute is facially deficient—by not mandating the procedural and substantive protections discussed below—presents too great a risk of potential infringement of First Amendment rights to allow the FBI to side-step constitutional review by relying on its voluntary, nationwide compliance with the Second Circuit's limitations." *In re Nat'l Sec. Letter*, 930 F. Supp. 2d at 1075. *See also Miller v. French*, 530 U.S. 327, 341 (2000) ("We cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question.") (internal quotation marks and citation omitted).

Finally, even if the broad statutory language of Section 2709(c) could be read as suggested by the *Mukasey* court, it still does not meet strict scrutiny. A prohibition on speech might satisfy strict scrutiny if "a good reason exist[ed] reasonably to apprehend a risk" of a serious harm from the speech. *Mukasey*, 549 F.3d at 882. But even as rewritten by the Second Circuit, the statute does not require that the harm be serious—or even more than *de minimis*— only that it be somehow related to a terrorism investigation. That is, it permits speech to be suppressed upon a determination that there is a risk that it might lead to some kind of "interference with [an] investigation" that is in some way related to terrorism, no matter how minimal the interference may be. The statute is not narrowly tailored to promote the interest in national security.

### III.   The Judicial Review Standards of the Nondisclosure Requirement in 18 U.S.C. § 3511(b) Violate Separation of Powers

The applicable provisions of Sections 3511(b)(2) and (3) also fail to pass constitutional muster because they impose an unduly deferential standard of review, thus violating the separation of powers doctrine. Under the statute, the court may dissolve the gag order only if the

court:

> finds that there is no reason to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person.

18 U.S.C. §§ 3511(b)(2); (3). The statute further requires that if certain government officials so certify, "such certification shall be treated as conclusive unless the court finds that the certification was made in bad faith." *Id.*

In *Boumediene v. Bush*, 553 U.S. 723 (2008), the Supreme Court held that executive certifications that supplant judicial scrutiny are an unconstitutional substitute because the court "must have sufficient authority to conduct a meaningful review" and "have the means to correct errors that occurred during the [executive fact finding] proceedings." *Id.* at 783-86. The court focused on the importance of the separation of powers when balancing national security with individual liberty, observing that while "[s]ecurity depends upon a sophisticated intelligence apparatus," security is equally dependent on "fidelity to freedom's first principles" including "the personal liberty that is secured by adherence to the separation of powers." *Id.* at 797.

While *Boumediene* specifically addressed *habeus corpus*, other courts have applied the same logic to Section 3511. The district court in *In re National Security Letter* noted that it could "only sustain nondisclosure based on a searching standard of review, a standard incompatible with the deference mandated by Sections 3511(b) and (c)." 930 F. Supp. 2d at 1077. In *Mukasey*, the Second Circuit likewise emphasized the importance of separation of powers in rejecting this overly deferential review standard. 549 F.3d at 882-83. ("The fiat of a governmental official, though senior in rank and doubtless honorable in the execution of official duties, cannot displace the judicial obligation to enforce constitutional requirements.")

21

The Supreme Court has continually emphasized that despite potential interplay among the three branches, "it remains a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another." *Loving v. United States*, 517 U.S. 748, 757 (1996). *See also United States v. Klein*, 80 U.S. 128, 145-48 (1871). Similarly, it is well settled that "[d]eference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark*, 435 U.S. at 843. Here, Section 3511 violates the tenet of separation of powers by limiting the Court's ability to review the nondisclosure provisions, and thus "impermissibly threatens the institutional integrity of the Judicial Branch." *Mistretta v. United States*, 488 U.S. 361, 383 (1989) (*quoting Commodity Futures Trading Com. v. Schor*, 478 U.S. 833, 851 (1986)). *See also United States v. Moussaoui*, 382 F.3d 453, 469 (4th Cir. 2004) ("Stated in its simplest terms, the separation of powers doctrine prohibits each branch of the government from intrud[ing] upon the central prerogatives of another. Such an intrusion occurs when one branch arrogates to itself powers constitutionally assigned to another branch or when the otherwise legitimate actions of one branch impair the functions of another.").

## IV.  The Statute is Unconstitutional as Applied to (G) Even if the Purported Mukasey Narrowing Provisions are Used

Even if it were appropriate for this Court to apply the purported *Mukasey* narrowing provisions to try to save Sections 2709(c) and 3511(b), the government cannot meet that artificial standard here.  Specifically, in *Mukasey* the Second Circuit accepted the government's agreement that it would bear the burden of proof to persuade a district court that there is a "good reason" to believe that disclosure may risk one of the harms enumerated in Section 3511(b)(3) in order to allow a nondisclosure provision to stay in place. *Mukasey.* 549 F.3d at 875–76. Those enumerated harms are that disclosure "may result in a danger to the national security of the

United States, interference with criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person.  18 U.S.C. § 3511(b)(3).  The government has not made such showing here.

There is nothing in the unclassified Declaration of Donald Good suggesting that [ (G) ] disclosure of the existence of the NSL would risk one of the enumerated harms.  The unclassified portion of the declaration does not mention any facts specific to this particular NSL or to [ (G) ] Instead, it simply discusses NSLs generally, including how they are used in investigations, and details the FBI's automated procedure for generating NSLs.  *See e.g.*, Unclassified Good Declaration, ¶¶ 6-10, 19-21.  The declaration then summarily concludes that "in light of these concerns," Mr. Good certifies that disclosure of the NSL at issue in this case, including its contents, "may result" in "a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations or danger to the life or physical safety of any person." *Id.* at ¶ 15.  Mr. Good does not state that he has "good reason" to believe as much.  Nor does he explain how the disclosure of the mere fact of receipt could bring about these harms.  This is not enough, even under the *Doe* framework.  Instead, the Government seeks to place a prior restraint on [ (G) ] speech based on generalized statements about process the FBI generates by automated means.  That does not begin to approach the burden the Government must carry to satisfy strict scrutiny.

It is not surprising that the government cannot meet its burden.  [ (G) ] currently has more than [ (G) ] registered users. [ (G) ] ¶ 6.  [ (G) ] seeks to disclose, at a minimum, that it received, and complied with, [ (G) ] over [ (G) ] related to [ (G) ] more than [ (G) ] registered users.  This cannot risk any of the harms enumerated in Section 3511(b)(3). It cannot even risk any of the harms vaguely referenced in the

government's memorandum.  For example, ▓(G)▓ disclosure that it received ▓(G)▓ more than ▓▓▓(G)▓▓▓ would not provide ▓(G)▓ target with "knowledge about the scope or progress of a particular investigation" that would allow him or her "to determine the FBI's degree of penetration of their activities and to alter their timing or methods."  Mem. at 5. Nor would such disclosure alert "targeted individuals" "to the existence of an investigation."  *Id.* This is unlike even the hypothetical example offered by the Northern District of California in *In re National Security Letter* where disclosure of the existence of the NSL could potentially compromise a national security investigation because the electronic communications service provider "has only a handful of subscribers." *In re Nat'l Security Letter*, 930 F. Supp. 2d at 1076.

The fact that the NSL was issued more than ▓▓▓(G)▓▓▓ further suggests that the government cannot meet even the artificial "good reason" standard.  There can be little dispute that, at least in many instances, the need for secrecy of NSLs wanes with the passage of time.  For this reason, the Presidential Review Group recommended in December 2013 that NSL nondisclosure orders should remain in effect for no longer than 180 days without judicial re-approval.  *See* Liberty and Security in a Changing World:  Report and Recommendations from the President's Review Group on Intelligence and Communications Technologies at 27 ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (G) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Finally, the government has effectively conceded that a provider saying that it has

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (G) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

24

received ☐(G) causes no harm. Specifically, there can be no dispute that a provider that has never received an NSL can disclose as much. This is because the non-disclosure provision in Section 2709(c) can only be invoked where the FBI "has sought or obtained access to information or records under this section." 18 U.S.C. § 2709(c). Thus it would be proper for ☐(G) or any other provider to say (if true) that it had never received an NSL. The Attorney General's guidelines allow a provider to disclose within certain bands if it has received an NSL. Specifically, a provider can disclose that it has received between 0-999 NSLs. But that disclosure itself is essentially saying that a provider has received (at least) one NSL. Otherwise, the provider would unambiguously disclose that it received no NSLs. Moreover, providers who receive 1,200 NSLs are allowed to acknowledge receiving 1,000 of them. In light of that permitted disclosure, it is hard to fathom how the disclosure of the receipt of ☐(G) by a provider with ☐(G) users could cause greater harm. This distinction is unjustifiable in law.

Even assuming that *Mukasey's* narrowing provisions are appropriate to save the NSL statute, the government would still bear the burden of proof to persuade a district court that there is a "good reason" to believe that disclosure may risk one of the harms enumerated in Section 3511(b)(3) in order to allow the nondisclosure provision to stay in place. Here, the government does not meet that standard with respect to ☐(G) potential disclosure of the mere fact that it received ☐(G) And based on the limited information available to ☐(G) it is unclear if the government has met that standard for the contents of the NSL.

## CONCLUSION

For the foregoing reasons, ☐(G) respectfully requests that the Court deny the

25

Government's petition for enforcement of the entire nondisclosure provision of 18 U.S.C. § 3511

or, at a minimum, allow [ (G) ] to disclose the mere fact of receipt of the NSL at issue.


Dated:  June 8, 2015



*Counsel for* [ (G) ]

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2015, the foregoing Respondent's Opposition to Petition to Enforce Nondisclosure Provision was filed manually with the clerk of the court and served upon the below counsel for the United States via electronic mail.

> Eric J. Sokin
> Steven Y. Bressler
> U.S. Department of Justice, Civil Division
> Federal Programs Branch
> P.O. Box 883
> Washington, D.C. 20044
> Tel: (202) 353-0533
> Eric.Soskin@usdoj.gov
> Steven.Bressler@usdoj.gov



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LORETTA E. LYNCH,

               Attorney General

    v.

UNDER SEAL

Case No. 15-CV-001180

~~FILED UNDER SEAL~~
PURSUANT TO
18 U.S.C. § 3511(d)

## DECLARATION OF [(G)]

I, [(G)] hereby declare as follows, pursuant to 28 U.S.C. § 1746:

    1.    I am currently [(G)] Counsel at [(G)] [(G)]. I have held that position since August 2014. Prior to that, my title at [(G)] was [(G)] Counsel. I held that position from [(G)] [(G)].

    2.    One of my responsibilities is overseeing [(G)] compliance with global privacy and data protection laws. This includes overseeing [(G)] responses to government requests for information regarding [(G)] users. As such, I am familiar with [(G)] efforts to respond to the National Security Letter ("NSL") the Federal Bureau of Investigation ("FBI") issued to [(G)] on [(G)]. I am also generally familiar with [(G)] business and

1

operations.   The statements in this declaration are based upon my personal

knowledge.  If called upon to do so, I could and would testify thereto under oath.

3.   [(G)] licenses and operates the [(G)] which consists

of [(G)]

[(G)] to provide users with [(G)]

[(G)]

4.   The [(G)] allows users to [(G)]

[(G)] Users can [(G)]

[(G)]

6.   Currently, [(G)] has more than [(G)] registered users.

7.   On [(G)] the FBI served [(G)] with a NSL dated

[(G)] which sought information regarding the accounts

[(G)] A true and

correct copy of that NSL is attached as Exhibit A hereto.

8.   In response to that NSL, on [(H)] provided to

the FBI the [(G)] record for the accounts in question.

2



I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___4___ day of June 2015.

# EXHIBIT A

Pages 38 through 42 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - - -
Code G