IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LORETTA E. LYNCH, Attorney General | Case No. 15-CV-001180 |
| v. | ~~FILED UNDER SEAL~~ PURSUANT TO 18 U.S.C. § 3511(d) |
| UNDER SEAL | |

**RESPONDENT'S SUR-REPLY IN OPPOSITION TO PETITION TO ENFORCE NONDISCLOSURE PROVISION**

## PRELIMINARY STATEMENT

Passage of the USA FREEDOM Act of 2015 (the "USAFA") does not resolve (G) objection to continued application of the nondisclosure provision in the National Security Letter ("NSL") served on (G) Put simply, while the USAFA makes many laudable changes to the national security legal process framework, it does not change the fact that the government has not shown why (G) should still be prevented from disclosing that it received an NSL.

On an as-applied basis, the government has not met its burden under the USAFA of establishing that there is "reason to believe" that disclosure of information subject to the nondisclosure requirement—particularly the mere fact that (G) NSL over (G) —may result in an enumerated harm.[1] Nor does the USAFA resolve the problems with the gag order provision of 18 U.S.C. § 2709(c) that render it constitutionally deficient: Section 2709(c) still allows the FBI to gag recipients about both the content of an NSL and the mere fact of receipt. And it still imposes a gag order of indefinite duration, at least until procedures are implemented to provide for the automatic expiration of gag orders. Thus, the NSL nondisclosure requirement remains an improper prior restraint and content-based restriction on speech—the USAFA doesn't change that.

## THE USA FREEDOM ACT

The most relevant change the USAFA made to the statute authorizing issuance of NSLs is the addition of subsection (d) stating that a nondisclosure requirement imposed by the NSL statute is subject to judicial review under 18 U.S.C. § 3511. *See* USA FREEDOM Act of 2015, Pub. L.

[1] Of course, (G) has not been allowed to see the document that the government contends makes that showing, and requests that the Court order the document produced to (G) counsel before the Court rules on the government's petition, or else refuse to consider it, as (G) is precluded from being able to specifically respond to it, but finds it inconceivable that the submission supports the argument that (G) disclosing the mere fact of (G) NSL in (G) meets the USAFA's heightened standard.

No. 114-23, § 503(a). With respect to Section 3511, the USAFA changes the procedures for initiating judicial review of an NSL to incorporate the narrowing procedures identified by the Second Circuit in *John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008). *See* Reply in Support of Petition for Judicial Review and Enforcement of a National Security Letter ("Reply") at 4. Even according to the government, this change is irrelevant because litigation was initiated under the prior version of the statute. *Id.* at 3, n.4. The government does believe, however, that the USAFA's modifications to the standard of review of an NSL do apply here. *Id.* Even if that is the case, it does not dictate a different outcome.

Under the prior version of the NSL statute, a district court could only modify a nondisclosure requirement if there was "no reason to believe" that disclosure "may result in a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." 18 U.S.C. § 3511(b)(3). After the USAFA, a district court must extend a nondisclosure requirement if "there is reason to believe" that disclosure of information subject to the nondisclosure requirement may result in one of the same harms. *See* Pub. L. 114-23 § 502(g). But prior to the USAFA's passage, the government had already been holding itself to that standard as a result of the *Mukasey* ruling. *See* Reply at 2, n.1. Thus, while the USAFA struck Section 3511's clearly unconstitutional "no reason to believe" language, the USAFA does not change the legal standard to be applied in this case.

With respect to termination of nondisclosure requirements in NSLs, the USAFA merely requires the Attorney General to in the future "adopt procedures" to "review at appropriate intervals" nondisclosure requirements to assess whether facts supporting nondisclosure continue to exist, and to terminate such nondisclosure requirements if facts no longer support nondisclosure.

*See* Pub. L. 114-23 § 502(f). As the government acknowledges, however, those procedures are not currently in place and need not be adopted until December 2015. *See* Reply at 5. Further, the USAFA imposes no specific parameters on the contemplated procedures with respect to the outer limit of when the review of any particular NSL can occur, the frequency with which such reviews will occur, or the standards for determining when a nondisclosure requirement is no longer supported. Regardless, since no such procedures are in place now, they cannot help the government justify the prior restraint Section 2709(c) imposes on (G)

Finally, with respect to permitted disclosures regarding NSLs, the USAFA amends and codifies the reporting guidelines described in Deputy Attorney General Cole's January 27, 2014 letter. *See* Respondent's Opposition to Petition for Judicial Review and Enforcement of National Security Letter ("Opp.") at 9. Under those guidelines, the government said that it would not enforce nondisclosure provisions where providers report in separate categories "the number of NSLs received, reported in bands of 1000 starting with 0-999." *Id.* And while the USAFA allows providers to report the number of NSLs received in either bands of 1000 or 500, providers are still not permitted to disclose the number of NSLs received in bands smaller than 500 without either court order or government permission. *See* Pub. L. 114-23 § 604(a), (b). Again, the USAFA does not resolve the issues presented here.

## ARGUMENT

### I. Prohibiting (G) from Disclosing that it (G) Remains Unconstitutional Notwithstanding the USAFA

Passage of the USAFA does not change the burden the government must meet to justify muzzling (G) The USAFA merely codifies one of the *Mukasey* narrowing provisions that the government claims it was already voluntarily following; that is, in order for the nondisclosure provision to stay in place, the government must demonstrate that there is "reason to believe" that

the disclosure sought "may result in: a danger to the national security of the United States; interference with a criminal, counterterrorism, or counterintelligence investigation; interference with diplomatic relations; or danger to the life or physical safety of any person." Pub. L. 114-23 § 502(g). As explained in (G) opposition, the government has not met its burden with respect to (G) disclosure that it (G) when (G) has more than (G) registered users. *See* Opp. at 22-25.

The government proffers several arguments in its reply for why it has met its burden, all of which rely on the classified declaration of Donald Good. None of these arguments withstand scrutiny. The government first argues that (G) "more limited" disclosure that it (G) (G) during a (G) "would link Respondent to a ***particular*** NSL, served in a ***particular*** point in time in a ***particular*** geographic area of the United States." Reply at 9-10 (emphasis added). Even without the benefit of seeing the classified Good Declaration, such a statement cannot be true as a matter of language. "Particular" is defined as "of, relating to, or being a single person or thing" and "of, relating to, or concerned with details."[2] A disclosure that (G) during a (G) without more, reveals nothing about any (G) and provides no "details" regarding any NSL. And such disclosure says literally nothing about geographic area— (G). services are global and not circumscribed by geography.

The government next disputes (G) assertion that given (G) registered users disclosure of receipt of (G) unspecified (G) cannot cause any of the enumerated harms by asserting that "the relevant pool is not Respondent's base of innocent,

[2] *Particular*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/particular (last accessed July 15, 2015).

registered users" but rather "the set of active users knowingly engaged in unlawful activities likely to subject them to FBI surveillance in a particular geography at a particular time." Reply at 10. The government does not quantify this universe. It also ignores the fact that (G) is not seeking to disclose in real time that it received an NSL such that it might cause a target to modify his ongoing behavior. Moreover, no target would understand that such a disclosure pertains to his activities (G) as he would have no way of knowing how many other possibly culpable users are or were using (G). Further, the NSL does not entitle the government to ongoing information, so disclosure cannot cut off a source of evidence. What it might convey is that the government is aware of (G) and very occasionally (G) serves NSL process on it. Yet this would be equally clear if (G) (G). Thus,

Even more implausible is the government's claim that if (G) disclosed (G) (G) during (G) time period, it "would provide a wealth of detailed information to our adversaries, contrary to the structure and intent of the statutory scheme, and would help detection and evasion of our intelligence and counter-terrorism efforts." Reply at 10. (G) does not seek to disclose a "wealth" of information. In fact, what (G) seeks to disclose is the exact opposite of "detailed." Nor does the government explain how it would be "contrary to the structure and intent of the statutory scheme" and "help to facilitate detection and evasion of our intelligence and counter-terrorism efforts," for a provider that (G) to disclose as much, particularly given that a provider that receives 1,200 NSLs can acknowledge receiving between 1,000 and 1,499 of them under the USAFA. *See* Pub. L. 114-23 § 604(a)(2).

Lastly, the government argues it has met its burden because (G) requested

disclosure will result in harm to national security "by adding to the information available to adversaries." Reply at 11. This is a tautology. The definition of "disclose" is "to make known or public."[3] If (G) requested disclosure were sufficient to cause an enumerated harm, disclosure would never be allowed. The NSL statute cannot be read to yield such absurd results. *See e.g., In re Total Realty Mgmt.*, LLC, 706 F.3d 245, 251 (4th Cir. 2013) ("Principles of statutory construction require a court to construe all parts to have meaning and, accordingly, avoid constructions that would reduce some terms to mere surplussage."). In fact, the USAFA expressly permits providers to disclose the fact of receipt of NSLs and similar national security process.

**II. The USAFA Does Not Cure (G) Facial Challenge**

In its Opposition, (G) identifies several ways in which Section 2709(c)'s gag provision is facially unconstitutional: It is a content-based restriction on speech that is not narrowly tailored to serve the government's interest in protecting national security. *See* Opp. at 17-20. And it is a prior restraint that seeks to silence (G) before it can speak, but does not meet the standards sufficient to justify a prior restraint. *See id.* at 12-16. Passage of the USAFA does not cure these deficiencies.[4]

Even with passage of the USAFA, Section 2709(c)'s gag provision is still not narrowly tailored to protect national security because it allows the FBI to gag recipients not only about the content of the NSL, but also the mere fact of receipt. *See id.* at 19; *In re Nat'l Sec. Letter*, 930 F. Supp. 2d 1064, 1076 (N.D. Cal. 2013) ("[T]he government has not shown that it is generally necessary to prohibit recipients from disclosing the mere fact of their receipt of NSLs.").

[3]*Disclose*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/disclose (last accessed July 15, 2015).

[4] (G) acknowledges that the USAFA's removal of Section 3511's requirement that the district court treat a government recertification as "conclusive unless the court finds that the recertification was made in bad faith" moots the argument that such a deferential standard violates the separation of powers doctrine. *See* Opp. at 20-22.

Likewise, the gag provision still imposes a restraint of unlimited duration. *See* Opp. at 18-19; *In re Nat'l Sec. Letter*, 930 F.Supp.2d at 1076-77 ("By their structure . . . the review provisions are overbroad because they ensure that nondisclosure continues longer than necessary to serve the national security interests at stake.").

The government claims that the USAFA cures the unlimited duration problem because it requires the Attorney General to create procedures to review nondisclosure requirements to assess whether facts supporting nondisclosure continue to exist. *See* Reply at 5. ("The [USAFA] not only 'allows' but 'requires' the Government to rescind the non-disclosure order once the impetus for it has passed."). But the USAFA itself does not "require" the government to rescind any nondisclosure order; it only requires that the government implement procedures for reviewing and rescinding such orders. Moreover, these procedures are not in place now, and do not need to be until December 2015. There also is no guarantee that the procedures ultimately implemented will pass constitutional muster because the USAFA sets no specific parameters governing the procedures.

Section 2709(c) is also still not narrowly tailored even after the USAFA because its gag provision is still satisfied whenever any of the specified harms "may" occur. *See* Pub. L. 114-23 § 502(g); Opp. at 19. The harms enumerated in the statute also still extend to more than just national security harms, including "interference with a criminal . . . investigation" and "danger to the . . . physical safety of any person." *Id.* Moreover, because the gag provision still fails to satisfy strict scrutiny, it also still does not meet the standard to justify prior restraint. *See* Opp. at 16-17.

The government next argues that the Court should ignore the constitutional infirmities of Section 2709(c) because the statute has been constitutionally applied to (G) and "a person to whom a statute may constitutionally be applied will not be heard to challenge the statute on the

ground that it may be conceivably applied unconstitutionally to others, in other situations not before the Court." Reply at 6 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)). As discussed above, the statute has not been constitutionally applied to (G) Moreover, first amendment overbreadth challenges are the exception to the rule the government cites. *See e.g., Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999). And in a case brought under the Fourth Amendment, the Supreme Court recently reaffirmed that facial challenges are not disfavored and that the Court has allowed such challenges to proceed under a diverse array of constitutional provisions. *See City of Los Angeles, Calif. v. Patel*, No. 13-1175, 2015 WL 2473445, at *5 (U.S. June 22, 2015).

*Broadrick* is also inapplicable. There, appellants who were alleged to have violated an Oklahoma statute restricting the political activities of state civil servants conceded that the statute was constitutionally applied to the conduct they engaged in (soliciting money from coworkers for the benefit of their superior), but argued that the statute was nonetheless unconstitutional because it could be construed to cover other protected political expression such as wearing buttons. *Broadrick*, 413 U.S. at 2911, 2914-5. Here, by contrast, (G) facial challenge to Section 2709 is based on the same improper restriction on speech being imposed on (G)

Nor should the Court ignor (G) facial challenge to Section 2709's gag provision because other courts have enforced NSLs challenged by other recipients. *See* Reply at 7, n.6. None of the government's cases stand for the proposition that a facial challenge cannot be brought once a court enforces a statute. In fact, such suggestion is undermined by the fact that an instance of previous enforcement the government cites, *In re National Security Letter*, Case No. 12-mc-0007, Dkt. No. 17-3 (AJT/IDD)(E.D. Va. April 24, 2012), occurred nearly a year before the court's decision in *In re Nat'l Sec. Letter*, 930 F.Supp.2d 1064 (N.D. Cal. 2013). But that did not stop the

Northern District of California from not only taking up the facial challenge, but also finding the statute unconstitutional.

Two other cases the government cites (*In re Matter of NSLs*, Case No. 13-cv-1165 SI (N.D. Cal.) and *In re Matter of NSLs*, Case No. 13-mc-80089 SI (N.D. Cal.)) relate to the same petitioner, who sought to set aside the NSL entirely as opposed to just the nondisclosure provision. In those instances, the court denied the petitioner's challenges "given the as-applied showings, given that the constitutionality of the statute as written was under review at the Ninth Circuit, and given that the petitioner did not raise arguments *specific* to the two NSLs at issue why the nondisclosure orders should not be enforced." *See e.g. In re Matter of NSLs*, No. 13-cv-1165 SI, Order Denying Petition to Set Aside and Granting Cross Motion to Enforce, Aug. 12, 2013, at 3. Those rationales do not apply here.

Finally, the government asserts that restricting (G) speech is allowable because, like limitations on information obtained in grand jury proceedings or voluntarily in civil discovery, the statute restricts only information learned through participation in confidential proceedings. *See* Reply at 12. But the government's cases deal with disclosure of substantive information provided or received in confidential proceedings, not the mere fact of participation in such proceedings.[5] In fact, one of those cases, *First Am. Coalition v. Judicial Review Bd.*, 784 F.2d 467 (3d Cir. 1986), supports the conclusion that the mere fact of participation in a confidential proceeding is not confidential. In that case, the district court entered an order imposing confidentiality on any witness appearing before a judicial review board, including "concerning the fact of the witness'

[5] *See e.g., Hoffman-Pugh v. Keenan*, 338 F.3d 1136, 1139-40 (10th Cir. 2003)( grand jury witness sought "to relate publicly her experience and testimony before the grand jury" including "questions addressed to her before the Boulder grand jury and her answers."); *In re Subpoena to Testify*, 864 F.2d 1559, 1562 (11th Cir. 1989)(finding that district court had the authority to prevent witness from disclosing materials prepared for or testimony given in the grand jury proceedings or related proceedings).

appearance and the substance of any testimony." *Id.* at 470. The Third Circuit upheld the confidentiality requirement in part, but concluded that "to the extent the Board regulation and the district court's order prevent witnesses from disclosing their own testimony, those directives run afoul of the First Amendment as impermissibly broad prior restraints." *Id.* at 479.

**CONCLUSION**

Passage of the USAFA does not resolve (G) as-applied or facial challenges to continued enforcement of the nondisclosure provision of the NSL issued to (G) (G) respectfully requests that the Court deny the Government's petition for enforcement of the entire nondisclosure provision of 18 U.S.C. § 3511 or, at a minimum, allow (G) to disclose the mere fact of receipt of the NSL at issue.

Dated: July 15, 2015

/s/ (G)




*Counsel for* (G)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2015, the foregoing Respondent's Sur Reply in Opposition to Petition to Enforce Nondisclosure Provision was filed manually with the clerk of the court and served upon the below counsel for the United States via electronic mail.

Eric J. Sokin
Steven Y. Bressler
U.S. Department of Justice, Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 353-0533
Eric.Soskin@usdoj.gov
Steven.Bressler@usdoj.gov

