IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORETTA E. LYNCH, | ) | |
|       Attorney General | ) | Case No. 15-cv-001180 |
| | ) | |
|     v. | ) | |
| | ) | |
| UNDER SEAL | ) | PURSUANT TO |
| | ) | 18 U.S.C. § 3511(d) |
| | ) | |

**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LORETTA E. LYNCH,<br>        Attorney General<br><br>        v.<br><br>UNDER SEAL | Case No. 15-cv-001180<br><br>~~FILED UNDER SEAL~~<br>PURSUANT TO<br>18 U.S.C. § 3511(d) |

**FURTHER RESPONSE IN SUPPORT OF PETITION FOR JUDICIAL REVIEW AND ENFORCEMENT OF A NATIONAL SECURITY LETTER PURSUANT TO 18 U.S.C. § 3511**

**INTRODUCTION**

Respondent's Sur-Reply confirms that the enactment of the USA FREEDOM Act of 2015, Pub. L. No. 114-23 (June 2, 2015) ("USAFA"), directly impacts Respondent's claims in this case by buttressing the facial constitutionality of the statutes governing the FBI's issuance and enforcement of National Security Letters ("NSLs"), including the nondisclosure requirements sometimes contained therein, in contrast to Respondent's professed view that "the USAFA does not resolve its objections to enforcement of the National Security Letter" at issue here. Respondent's remaining arguments in support of its facial challenge are meritless. As to Respondent's as-applied challenge to the enforcement of *this* NSL nondisclosure provision, Respondent's effort to downplay the nature of its requested disclosure in its latest brief is inconsistent with its entreaty in its prior brief that it be permitted to make a specific disclosure regarding its receipt and compliance with the NSL to the target of the FBI's investigation. Further, as the Declaration of Acting Assistant Director Donald Good makes clear, even a limited disclosure – and certainly the disclosure to the target that Respondent previously demanded

explicitly – would reasonably be expected to harm national security. For these reasons, the Court should enforce the challenged NSL nondisclosure provision.

## ARGUMENT

### I. The Nondisclosure Requirement in the NSL Served on Respondent Should Be Enforced and is Constitutional.

In its latest brief, Respondent asserts that application of the nondisclosure requirement is unconstitutional because Respondent seeks to make only a "'limited' disclosure ▊(G)▊ ▊(G)▊ Respondent's Sur-reply in Opposition to Petition to Enforce Nondisclosure Provision, at 4 (July 15, 2015) ("Resp. Sur-Reply"). As the Classified Declaration of Acting Assistant Director ("(A)AD") Donald Good of the Cyber Division of the Federal Bureau of Investigation ("FBI") stated in detail, even a limited disclosure would reasonably be expected to alert the target to the possibility of an investigation, potentially causing the target to change its tactics and frustrating the underlying investigation. *See* Classified Good Declaration at ¶ 29, previously submitted to the Court *ex parte* and *in camera*. Respondent's suggestion that (A)AD Good's explanation of these harms should be disregarded is unpersuasive. Contrary to Respondent's repeated suggestion ▊(G)▊ ▊(G)▊ (A)AD Good specifically examined the national security harm reasonably to be expected *now* from a disclosure and reached his conclusions regarding such harm *at this time*. *See* Classified Good Decl. at ¶¶ 23-34. For this reason, Respondent is simply wrong to suggest that (A)AD Good's analysis of the harm be disregarded ▊(G)▊ ▊(G)▊

Respondent's assertion that a disclosure would present no risk of linking Respondent to an NSL served in a particular geographic area at a particular point in time is likewise flawed. The government's

concern about this (G) exists because, (G)

(G)

(G) *See* Classified Good Decl. ¶ 18. Further,

(G)

(G) In the event Respondent discloses receipt of an NSL

(G)

Respondent fares no better in its attempt to insist that disclosure of its receipt of an NSL would tell the target no more (G)

(G)

The understanding that a probabilistic estimate, rather than specific knowledge, could be "considered with other bits and pieces of information," by the target to develop a picture "detrimental to the national security of the United States" is a reality routinely relied on by courts in considering the government's need to prevent such harms. *See Bowers v. Dep't of Justice*, 930 F.2d 350, 355 (4th Cir. 1991) (expert

intelligence declarations can establish that even "dull," "repetitious," or "tedious" bits of intelligence may be composited to harm national security through their "total").

In addition, Respondent repeats the already-refuted canard that its "use of" the aggregate reporting bands previously authorized by the Director of National Intelligence and now authorized by the USA FREEDOM Act "already suggests it received at least one NSL." Respondent's Sur-Reply at 5. As Petitioner explained in its Reply, a disclosure that a provider has received aggregate national security process in a band between 0 and several hundred "*does not* necessarily reveal that the provider has received an NSL at all . . . [(G)] [(G)] [(G)]" In addition, because the lower limit of the band starts at zero and not at one, even reporting receipt specifically of "0-499 NSLs" [(G)] does not necessarily indicate receipt of any NSLs at all because Respondent (and other providers) could report accurately in that band regardless of whether it had actually received an NSL. *See* USA FREEDOM Act § 603(a) (codified at 50 U.S.C. § 1874(a)).

Respondent's effort to recast its challenge in the narrow terms of a "limited disclosure," Resp. Sur-Reply at 4, should also be discounted because Respondent's opening brief challenging application of the NSL nondisclosure requirement to Respondent was not so limited. Rather, Respondent insisted therein that the Constitution required that it be permitted to "disclose to a customer who is the target of the NSL that the provider received and complied with an NSL regarding the customer." Respondent's Opposition to Petition at n.1 (June 8, 2015) ("Resp. Opp. Br."); *see also id.* at 23 (arguing that the

Constitution required permitting disclosure of the fact of receipt of an NSL "at a minimum," without specifying the time period). Respondent has not renounced its earlier position regarding a broader disclosure, and there is therefore no justification for considering its challenge to be a narrow, "limited" one here.[1] In any event, as explained above, even a purportedly "limited" disclosure would be reasonably expected to cause national security harm.

In sum, Respondent's Sur-Reply provides no reason to disregard (A)AD Good's explanation of the national security harms that would reasonably be expected from informing the target, either directly or by potential implication, about the FBI's investigation of the target and its use of an NSL in that investigation. Consistent with the conclusions of other courts, the nondisclosure requirement in this NSL is therefore constitutional and should therefore be enforced. *See, e.g., Doe v. Mukasey*, 549 F.3d 861 (2d Cir. 2008); *In re National Security Letter*, No. 1:12-mc-007 (AJT/IDD) (E.D. Va. April 24, 2012); *In re Matter of NSLs*, No. 13-cv-1165-SI (N.D. Cal. Aug. 12, 2013).

## II. Respondent's Facial Challenge to the NSL Nondisclosure Statutes, as Amended by the USA FREEDOM Act, Should Be Rejected.

As Petitioner previously explained, given that the NSL nondisclosure requirement may be constitutionally applied to Respondent here, there is no basis for the Court to entertain a facial challenge at all. *See* Reply Br. at 6-7 (*citing, e.g., Gonzales v. Carhart*, 550 U.S. 124, 168 (2007); *Parker v. Levy*, 417 U.S. 733, 759 (1974)). Petitioner's only response is that "first amendment overbreadth challenges

---

[1] Respondent's answer to the government's explanation that permitting Respondent to make a more "limited" disclosure would, if repeated in the context of other providers receiving NSLs, "provide a wealth of detailed information to our adversaries" once considered "on an aggregate basis" is a non sequitur. *See* Reply Br. at 10; Resp. Sur-Reply at 5. The fact that information about Respondent itself does not, on its own, lead to the harm does not mitigate the national security harms that would reasonably be expected to result from the position Respondent advocates: "[that] as a matter of policy [] service providers should be able to, when appropriate, disclose to a customer who is the target of the NSL that the provider received and complied with an NSL regarding the customer." Resp. Opp. Br. at n.1.

are the exception to the rule" that courts should refrain from unnecessarily deciding facial challenges in circumstances where a statute is constitutional as-applied. *Compare* Resp. Sur-Reply at 8 *with* Reply Br. at 6. But Respondent fails to acknowledge that Petitioner specifically addressed whether the overbreadth exception is applicable and explained that, to bring a facial overbreadth challenge here, where the statute is constitutional as-applied, Petitioner must "describe the instances of arguable overbreadth" and demonstrate "from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally." Reply Br. at 7 (*quoting Wash St. Grange*, 552 U.S. at 450); *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)). Respondent does not address either of these First Amendment cases, and instead, specifically declines to accept the burden imposed by this precedent of identifying other instances where the NSL nondisclosure requirement is unconstitutional, *see* Resp. Sur-Reply at 8 ("[Respondent's] facial challenge [] is based on the *same improper restriction* on speech being imposed on [Respondent]").[2] Respondent has therefore failed to satisfy the requirements for its facial challenge to be heard.

Respondent's facial challenge is unpersuasive at any rate, especially when considered in the context of the enactment of the USA FREEDOM Act. As Petitioner explained in its previous briefing, the NSL nondisclosure requirement "is not a typical prior restraint or a typical content-based restriction in which a person's right to speak is conditioned on prior approval from the government." Reply Br. at 15 (*quoting Mukasey*, 549 F.3d 877). Rather, enforcement of NSLs should be treated as a categorical prohibition on disclosures of information learned only from the government by participation in a

---

[2] Respondent's attempt to distinguish *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), on the grounds that the plaintiffs in that case had "conceded that the statute was constitutionally applied," Resp. Sur-Reply at 8, has no relevance here. Petitioner relied not on *Broadrick*, but on subsequent Supreme Court precedent that did not involve similar concessions. *See generally Parker*, 417 U.S. 733; *Gonzales*, 550 U.S. 124 (cited in Petitioner's Reply Brief at 6-7).

confidential investigation, and punishable by the threat of criminal sanctions imposed after disclosure. *See* Reply Br. at 15 (*citing, e.g., Landmark Comm. v. Virginia*, 435 U.S. 829 (1978)). And, even if reviewed as a prior restraint, the NSL statute survives First Amendment scrutiny as a proper method to protect the government's own interests in secrecy while providing the recipients with the appropriate safeguards of government-initiated judicial review. Reply Br. at 15-18; *see Mukasey*, 529 F.3d 877; *Marchetti*, 466 F.2d at 1317.[3] As the House Committee Report for the USA FREEDOM Act explains, the statutory amendments in the USA FREEDOM Act reinforce the constitutionality of the NSL provisions in this regard by "correct[ing] the constitutional defects in the issuance of NSL nondisclosure orders found by the Second Circuit in [*Mukasey*], and adopt[ing] the concepts suggested by that court for a constitutionally sound process." H.R. Rep. No. 114-109 at 24.

Respondent's other arguments regarding the facial validity of the NSL statutory scheme are also untenable. First, relying on the district court opinion in *In re NSL*, 930 F. Supp. 2d 1064, 1075 (N.D. Cal. 2013), Respondent asserts that the government's nondisclosure authorities are "not narrowly tailored to protect national security" because the government may restrict "the mere fact of receipt" of an NSL, and not merely its content. Resp. Sur-Reply at 6. Respondent fails to recognize, however, that the USA FREEDOM Act renders that analysis inapplicable, because the district court relied on the fact that "[t]he statute does not distinguish – or allow the FBI to distinguish – between a prohibition on disclosing mere receipt of an NSL and disclosing the underlying contents. The statute contains a blanket prohibition . . . ." 930 F. Supp. 2d at 1076 (*quoted in* Resp. Opp. Br. at 18). Although the government

---

[3] Respondent concedes that passage of the USA FREEDOM Act moots its claim about the standard of review applied in judicial proceedings, *see* Resp. Sur-Reply at n.4. Respondent makes no mention of its prior argument that the narrowing construction applied by the Second Circuit in *Mukasey* "cannot be reconciled with the statutory text," which is similarly mooted by the amendments in the USA FREEDOM Act. *Compare* Resp. Opp. Br. at 7-8 *and* 18-19 *with* Reply Br. at 3-4 (identifying effect of Sections 502 and 503 of USA FREEDOM Act).

respectfully disagrees with and has appealed that ruling, *see In re NSL, appeal docketed* No. 13-15957 (9th Cir.); *compare Mukasey*, 549 F.3d at 884 n.16 (noting that the judicial review provisions already enabled courts to modify or set aside a nondisclosure requirement that was no longer necessary), this objection is now moot because the USA FREEDOM Act provides the FBI with explicit statutory authority to agree to other disclosures in certain circumstances. *See* USA FREEDOM Act at § 502; 18 U.S.C. § 2709(c)(2)(A)(iii). In any case, as the facts here illustrate, there are unquestionably circumstances in which not only the contents of an NSL, but the fact of its issuance and receipt, must be kept secret in order to prevent the enumerated national security harms. *See supra* Part I.

Similarly, the review procedures created by the USA FREEDOM Act resolve Respondent's claim that the potential duration of a nondisclosure requirement is constitutionally problematic. *See* Reply Br. at 5; USA FREEDOM Act § 502(f)(1). Respondent claims that the USA FREEDOM Act has provided no answer because it requires only "procedures" for rescinding nondisclosure orders, and not the actual "rescind[ing] [of] any nondisclosure order." Resp. Sur-Reply at 7. The distinction Respondent describes has no meaning in the context of Respondent's challenge to the duration of a nondisclosure requirement "longer than necessary to serve the national security interests at stake." Resp. Opp. Br. at 18 (*quoting In re NSL*, 930 F. Supp. 2d at 1076). Congress has required that the procedures to be implemented *will* provide for "the termination of [] a nondisclosure requirement if the facts no longer support nondisclosure." USA FREEDOM Act § 502(f)(1)(B)-(C). This amendment thereby addresses precisely the circumstances challenged by Respondent by minimizing the possibility that NSL nondisclosure requirements will remain in effect after the need for them has lapsed.[4] And

---

[4] Respondent also complains that "these procedures are not in place now, and do not need to be until December 2015," but here, where Congress has already amended the statute and provided for implementation by the government within a matter of months, the Court should not address

Respondent cannot yet argue that these future procedures will fail to "pass constitutional muster," *see* Sur-Reply Br. at 7, because the issue is not yet ripe "when the issues are purely legal and when the action in controversy is [not yet] final and [] dependent on future uncertainties," such as the content of the procedures to be adopted. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) ("doctrine of ripeness prevents judicial consideration of issues until . . . presented in clean-cut and concrete form.").

Finally, Respondent objects that the USA FREEDOM Act does not require absolute certainty that a harm to national security, or other enumerated harm, will occur before authorizing imposition of a nondisclosure requirement. *See* Resp. Sur-Reply at 7. Even before the USA FREEDOM Act, the NSL statute placed the burden of persuasion in Court on the government, as the Second Circuit held in *Mukasey*. *See* 549 F.3d at 875. The USA FREEDOM Act's enactment further clarifies this burden: where the statute previously provided that a court could set aside or modify a nondisclosure requirement where "there is no reason to believe" that harm would result, the amended statute provides for a court to issue a nondisclosure order or extension thereof if "there *is* reason to believe" that a harm will result. *Compare* 18 U.S.C. § 3511(b)(2) – (3) (2012) *with* USA FREEDOM Act § 502(g), codified as 18 U.S.C. § 3511(b)(3) (emphasis added). This new language makes clear that the onus is on the government to make the requisite showing. Moreover, as Petitioner previously demonstrated, forecasts of future consequences are routinely affirmed even though such predictions are not measurements of "certainty." *See* Reply Br. at 19 (citing cases regarding harms from the disclosure of classified information, grand-jury proceedings, and judicial misconduct investigations). Because certainty cannot be had, particularly regarding predictions about national security and law-enforcement harms, the proper course is for

---

constitutional issues that have been significantly altered by Congress's substantial modifications of the statute. *Cf. ACLU v. Clapper*, Case No. 14-42-cv (2d Cir. May 7, 2015) at 94-95 (declining to enjoin intelligence collection program pending likely action by Congress).

reviewing courts to ascertain whether the proffered national security harms are sufficiently persuasive, weighing heavily in that assessment is the Executive Branch's expertise in evaluating the United States' national security and similar interests. *See id.* For this reason, Respondent's argument that the statute is unconstitutional because it does not require a certainty of harm is unconvincing.

## CONCLUSION

The challenged NSL nondisclosure requirement is constitutional and justified under the facts set forth by Petitioner here, and the statutory authority for NSLs, particularly as amended by the USA FREEDOM Act, is also constitutional. For these reasons, the Court should grant the Attorney General's Petition, declare the nondisclosure requirement valid, and enjoin respondent to comply.

Dated: July 30, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROD J. ROSENSTEIN
United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

_____
ERIC J. SOSKIN (PA Bar #200663)
Senior Counsel
STEVEN Y. BRESSLER
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:   (202) 353-0533
Facsimile:   (202) 616-8470
Eric.Soskin@usdoj.gov