IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORETTA E. LYNCH, | ) | |
|     Attorney General | ) | Case No. 15-cv-001180 |
| | ) | |
| v. | ) | |
| | ) | ~~FILED UNDER SEAL~~ |
| UNDER SEAL | ) | PURSUANT TO |
| | ) | 18 U.S.C. § 3511(d) |
| | ) | |

FILED UNDER SEAL

2015 MAY -8  PM 3: 57

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LORETTA E. LYNCH[1].
          Attorney General

       v.

UNDER SEAL

Case No. 15-cv-001180

PURSUANT TO
18 U.S.C. § 3511(d)

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR JUDICIAL REVIEW AND ENFORCEMENT OF A NATIONAL SECURITY LETTER PURSUANT TO 18 U.S.C. § 3511

### PRELIMINARY STATEMENT

National security and law enforcement investigations. by their very nature. require federal government officials to collect information. Secrecy is essential to the effective conduct of such investigations; public disclosure of steps taken to investigate the activities of terrorist groups and foreign intelligence organizations poses a direct and immediate threat to the government's ability both to detect and to prevent those activities. Alerted to the existence of an investigation, its direction, or the methods and sources being used to pursue the investigation, targeted individuals or groups can take steps to evade detection. destroy evidence. mislead investigators, and change their own conduct to minimize the possibility that future terrorist and foreign intelligence activities will be detected.

18 U.S.C. § 2709 is one of a number of statutes that authorize the government to collect information in service of a national security investigation and to prevent private parties from whom the

---

[1] Upon taking office on April 27. 2015. Attorney General Lynch has been "automatically substituted as a party" to this action. Fed. R. Civ. P. 25(d).

government requests information from destroying the confidentiality of the government's inquiry. Pursuant to that statute and as part of an authorized, ongoing national security investigation, the ███████████████ Federal Bureau of Investigation ("FBI") served a National Security Letter ("NSL") ████████████████████████████████████████████ ███ ("Respondent"). The NSL made a limited, specific inquiry for subscriber information related to an electronic account with Respondent. Pursuant to § 2709(c), a designee of the Director of the FBI certified that the NSL must remain secret to prevent harm to, *inter alia*, national security, and therefore that the NSL requires that respondent not disclose the existence or contents of the NSL.

The NSL nondisclosure obligation was imposed on respondent in compliance with the statutory requirement that a designated, senior FBI official personally certify the need for nondisclosure. And as set forth in the classified Declaration of Donald Good, Acting Assistant Director of the Cyber Division of the FBI ("Classified Good Decl."), to be submitted to the Court *ex parte* and *in camera* pursuant to 18 U.S.C. § 3511, there was and remains good reason to impose the nondisclosure requirement. The Court should therefore enforce the requirement that Respondent maintain the secrecy of the NSL.

While the nondisclosure requirement prohibits respondent from disclosing certain, limited information, it passes muster under the First Amendment. Numerous judicial precedents make clear that Congress may constitutionally prohibit disclosure of information about a secret government investigation that a private party learns only through its own involvement in the investigation. Indeed, courts have recognized that the "restraint" on communication of information learned solely by involvement in a government investigation is not a classic prior restraint of the type that receives heightened scrutiny. Regardless, the nondisclosure requirement here would survive even the strictest scrutiny, for it is designed to further the compelling governmental and public interest in effectively

-2-

detecting and preventing terrorism and foreign espionage, and it is carefully tailored to restrict only information that respondent has learned through its involvement in the NSL inquiry itself.

In addition, the NSL issued to respondent was accompanied by procedural protections that would satisfy the most searching test applied to prior restraints, and the government has applied those procedural protections here by: 1) accepting the burden of seeking judicial review of the NSL nondisclosure requirement; and 2) initiating this action within a reasonable time – approximately thirty days – after respondent objected to the NSL nondisclosure requirement.

For all of these reasons, the Court should grant the Attorney General's petition and order that respondent is bound by the nondisclosure requirement of the NSL and 18 U.S.C. § 2709.

## BACKGROUND

### I.      Statutory Background

#### A.      National Security Letters

The President of the United States has charged the FBI with primary authority for conducting counterintelligence and counterterrorism investigations in the United States. *See* Exec. Order No. 12333 §§ 1.14(a), 3.4(a), 46 Fed. Reg 59941 (Dec. 4, 1981). The FBI's experience with national security investigations has shown that electronic communications play a vital role in advancing terrorist and foreign intelligence activities and operations. *See* Classified Good Decl. (to be submitted *ex parte* and *in camera* to the Court pursuant to 18 U.S.C. § 3511(e) and 28 C.F.R. § 17.17), at ¶ 10.[2] Accordingly, pursuing and disrupting the actions of adversaries, including, *e.g.*, terrorist plots and espionage activities, often requires the FBI to seek information relating to electronic communications. *Id.*

_____

[2] The Attorney General will lodge (A)AD Good's declaration with the Classified Information Security Officer on May 8, 2015 and provide notice of its lodging to the Court once it has done so. As explained therein, the declaration contains classified information or other sensitive law enforcement

Section 2709, Title 18 U.S.C., was enacted by Congress 25 years ago to assist the FBI in

obtaining such information. Section 2709 empowers the FBI to issue an NSL, a type of administrative

subpoena. Several other federal statutes also authorize government authorities to issue NSLs in

connection with counterintelligence and counterterrorism investigations. *See* 12 U.S.C. § 3414(a)(5); 15

U.S.C. §§ 1681u-1681v; 50 U.S.C. § 436. Subsections (a) and (b) of § 2709 authorize the FBI to request

"subscriber information" and "toll billing records information," or "electronic communication

transactional records," from wire or electronic communication service providers. Section 2709 does not

authorize the FBI to seek the content of any wire or electronic communication. In order to issue an

NSL, the Director of the FBI, or a senior-level designee, must certify that the information sought is

"relevant to an authorized investigation to protect against international terrorism or clandestine

intelligence activities . . . ." *Id.* § 2709(b)(1)-(2).

### B.    Confidentiality of National Security Letters

Counterintelligence and counterterrorism investigations are frequently long-range, forward-

looking, and prophylactic in nature; that is, the government aims to disrupt terrorist acts against the

United States before they occur or thwart espionage before it is carried out. Because these

investigations are directed at individuals or groups taking efforts to keep their own activities secret, it is

---

information that the FBI has specifically determined cannot be shared with the public, respondent, or its
counsel. The government will file under seal and serve on respondent an unclassified version of (A)AD
Good's declaration that does not contain the classified information or other sensitive law enforcement
information that cannot be shared with respondent. These measures to protect classified and sensitive
law enforcement information are consistent with the judicial review procedures set forth by Congress for
review of NSL nondisclosure requirements, *see* 18 U.S.C. § 3511(e), and comport with well-established
precedent regarding the handling of classified information in civil litigation, *see, e.g., Stillman v. CIA*,
319 F.3d at 548–49 (in cases challenging agency determinations that information cannot be published
because it is classified, "in camera review of affidavits, followed if necessary by further judicial inquiry,
will be the norm" with the "appropriate degree of deference" given to the Executive Branch concerning
its classification decisions) (*quoting McGehee v. Casey*, 718 F.2d 1137, 1149 (D.C. Cir. 1983).

essential that these targets not learn that they are the subject of an FBI investigation. *See* Classified Good Decl. ¶¶ 24-31; *see also* Unclassified Declaration of Donald Good at ¶¶ 12-14 (to be served on Respondent in conjunction with this Brief and to be filed as an exhibit to the Notice Regarding *Ex Parte* Submission of the Classified Good Declaration) ("Unclassified Good Decl."). If targets learn that their activities are being investigated, they can be expected to take action to avoid detection or disrupt the government's intelligence gathering efforts. *See* Classified Good Decl. ¶¶ 25-27, 30, 31; Unclassified Good Decl. at ¶¶ 12-14. Likewise, knowledge about the scope or progress of a particular investigation allows targets to determine the FBI's degree of penetration of their activities and to alter their timing or methods. *See* Classified Good Decl. at ¶¶ 25, 30, 31. The same concern applies to knowledge about the sources and methods the FBI is using to acquire information. *See id.* ¶¶ 25, 30, 33-35.

The secrecy needed for successful national security investigations can be compromised if an electronic communications service provider discloses that it has received an NSL or provided information pursuant to an NSL. *See* Classified Good Decl. at ¶¶ 25, 32-35. To avoid that result, Congress has placed restrictions on disclosures by NSL recipients, contained in 18 U.S.C. § 2709(c). The nondisclosure requirement requires a case-by-case determination of need by the FBI and thus prohibits disclosure only if the Director of the FBI or another designated senior FBI official certifies that "otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." *Id.* § 2709(c)(1). If such a certification is made, the NSL itself notifies the recipient of the nondisclosure obligation. *Id.* § 2709(c)(2). Violation of the nondisclosure requirement is a criminal offense *if* the recipient discloses the information "knowingly and with the intent to obstruct an investigation or judicial proceeding." *Id.* § 1510.

## II.    Factual Background

As part of an ongoing, authorized national security investigation, the FBI issued an NSL dated
and served on                     to Respondent, requesting information concerning
non-content information related to the investigation. *See* Classified Good Decl. at ¶ 17.  In particular,
the NSL requested the names, addresses, length of service and electronic communications transactional
records for the account in question pursuant to 18 U.S.C. § 2709. *Id.*

The NSL was issued by                                                                                   an
FBI official who is authorized to issue NSLs under 18 U.S.C. § 2709.[3]  *See* Classified Good Decl. ¶ 18.
also certified pursuant to § 2709(b) that the information sought was relevant to an authorized
investigation to protect against international terrorism or clandestine intelligence activities. *See id.*

The NSL informed Respondent of the prohibition against disclosing the contents of the NSL,
certifying, in accordance with § 2709(c), that such disclosure could result in an enumerated harm that is
related to an authorized investigation to protect against international terrorism or clandestine intelligence
activities. *See id.* The letter notified Respondent that in accordance with 18 U.S.C. § 3511(a) and (b),
Respondent had a right to challenge the letter if compliance would be unreasonable, oppressive, or
otherwise illegal. *See* Unclassified Good Decl. ¶ 10; 18 U.S.C. § 3511(a).  The letter also advised that
Respondent had 10 days to notify the FBI as to whether it desired to challenge the nondisclosure
provision. *See* Unclassified Good Decl. ¶ 24.  Respondent did not object to providing the information
requested in the NSL, and in fact provided the information and, to the FBI's knowledge, has not
disclosed the contents of the NSL. *See* Unclassified Good Decl. ¶ 24; Petition ¶ 29.

-6-

On March 24, 2015, the FBI received a letter via facsimile from Respondent, dated March 23, 2015. *See* Exhibit 1. According to its letter, Respondent now seeks "to set aside the non-disclosure provisions of the NSL." *Id.* Respondent's letter further asked for responses regarding several matters, including whether the government: 1) would "agree that . . . the non-disclosure provision is no longer needed," and 2) will initiate the judicial proceeding for enforcement of the non-disclosure provision in this instance, where ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* In response to Respondent's letter, the FBI's Office of General Counsel and the FBI's litigation counsel at the Department of Justice indicated to Respondent that the justifications for the nondisclosure provisions in the NSL issued to Respondent continue to be valid, *see* Classified Good Decl. ¶ 24, and that, although ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the government would nonetheless agree to take on the burden of initiating an enforcement proceeding. *See* Unclassified Good Decl. ¶ 25.

## ARGUMENT

### I.   Standard Of Review

The Attorney General brings his petition for judicial review and enforcement of the NSL under 18 U.S.C. § 3511. Under that statute, Congress has provided that, when the recipient of an NSL "fail[s] to comply with [the] request for records, a report, or other information," the Attorney General "may invoke the aid of any district court of the United States within the jurisdiction in which the investigation is carried on or the person or entity resides, carries on business, or may be found, to compel compliance with the request." 18 U.S.C. § 3511(c). And the "request" that the Attorney General may seek to enforce in a court includes that "notif[ication]" (and imposition) "of the nondisclosure requirement." *Id.* § 2709(c)(2).[4] A disclosure of information about the NSL such as respondent wishes to make is thus a

---

[4] Section 3511(c) is symmetrical to § 3511(b), which authorizes NSL recipients to seek judicial

"fail[ure] to comply with [the] request" and, under § 3511, this Court "may issue an order," punishable as contempt, "requiring the [respondent] to comply with the request," including its nondisclosure requirement. *Id.*[5]

## II.      The National Security Letter Issued To Respondent And Its Nondisclosure Requirement Comply With The Underlying Statute, 18 U.S.C. § 2709(c).

The NSL statute, 18 U.S.C. § 2709(c), provides that:

> If the Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, certifies that otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person, no wire or electronic communications service provider, or officer, employee, or agent thereof, shall disclose to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request) that the Federal Bureau of Investigation has sought or obtained access to information or records under this section.

*Id.* § 2709(c)(1).  The statute further provides that, when nondisclosure is required, the NSL "shall notify the person or entity to whom the request is directed of the nondisclosure requirement[.]" *Id.* § 2709(c)(2).

---

review of a nondisclosure requirement.  Under § 3511(b), a district court "may modify or set aside" the nondisclosure requirement if the court finds "no reason to believe" that disclosure "may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." *Id.* § 3511(b)(2), (b)(3).

[5] Even in the absence of this express, statutory authorization to invoke the aid of this Court, the government would have standing to bring suit to vindicate its sovereign interests by preventing the disclosure of sensitive national security or law enforcement information. *See, e.g., Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 201-07 (1967) (noting the long line of cases recognizing that the United States may sue to protect its sovereign or statutory interests); *In re Debs*, 158 U.S. 564, 586 (1895) (the United States possesses a non-statutory cause of action to vindicate federal interests in the federal courts); *United States v. Marchetti*, 466 F.2d 1309, 1313 & n.3 (4th Cir. 1972) (following *Debs* to hold that the government had non-statutory standing to bring suit to enjoin a threatened disclosure of classified information).

As set forth below, the NSL nondisclosure obligation here is imposed in compliance with all of these requirements.

### A. As A Provider Of An "Electronic Communication Service," Respondent Is Subject To 18 U.S.C. § 2709(c) And The NSL Nondisclosure Obligation

The NSL statute, 18 U.S.C. § 2709, authorizes the FBI to obtain information via NSL from, and to impose a nondisclosure requirement on, a "wire or electronic communication service provider." *Id.* § 2709(a). As the provider of an online service that allows users to ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Respondent is such an electronic communication service provider.[6]

Section 2709 is contained in Title II of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701 *et seq.* ECPA defines "electronic communication service" ("ECS") as any service that "provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §§ 2510(15), 2711(1). "The language chosen by Congress" to define an electronic communication service thus "captures any service that stands as a 'conduit' for the transmission of wire or electronic communications from one user to another." *See Council on American-Islamic Relations Action Network, Inc. v. Gaubatz ("CAIR")*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011) (*quoting Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892, 902 (9th Cir. 2008), *cert. denied in relevant part,* 130 S. Ct. 1011 (2009), *and reversed in part on other grounds,* 130 S. Ct. 2619 (2010)). ECS providers in 1986 included, in addition to telephone companies, others such as "[e]lectronic ˙bulletin board[ ]'" operators and electronic mail companies. *See* S. REP. NO. 99-541 at 8-9 (1986), as reprinted in 1986 U.S.C.C.A.N. 3562-63. Respondent provides its users ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6]In its correspondence objecting to the nondisclosure requirement (Exhibit 1), Respondent has not disputed that it is an electronic communication service provider.

████████████████████████████████████████████████████████

████████████████ It is therefore an electronic communications service provider within the

meaning of the ECPA. *See, e.g., In re Zynga Privacy Litigation*, 750 F.3d 1098, 1103 (9th Cir. 2014)

(an ECSP enables the "transfer of electronic messages, such as email, between computer users);

*Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 643 & n.4 (E.D. Va. 2004) (Internet service

provider America Online was electronic communication service provider); *Inventory Locator Service v.

Partsbase*, 2005 WL 2179185, *24 (W.D. Tenn. September 6, 2005) (holding a password-protected

website containing an electronic bulletin board and a web-based forum where parties could

communicate was an ECS).

### B. An Authorized FBI Official Certified The Need For Nondisclosure Of The NSL To Respondent.

The NSL nondisclosure obligation on respondent here satisfies the requirement that the need for

nondisclosure be certified by an appropriate, senior FBI official. Under the NSL statute, 18 U.S.C. §

2709(c)(1), the nondisclosure obligation is imposed on an NSL recipient electronic communication

service provider such as respondent when "the Director of the Federal Bureau of Investigation, or his

designee ███████████████████████████████████████████████████

certifies that otherwise there may result a danger to the national security of the United States,

interference with a criminal, counterterrorism, or counterintelligence investigation, interference with

diplomatic relations, or danger to the life or physical safety of any person." Here ██████████████

████████████████ made the required certification in the NSL itself, using the statutory language. *See*

Classified Good Decl. at ¶18; *id.* ¶¶ 26-30 (explaining further the need for continued nondisclosure of

the NSL by respondent). ████████████████████ is designated as ████████████████

authorized to certify the need for nondisclosure of an NSL under 18 U.S.C. § 2709(c). *See* Classified

-10-

Good Decl. ¶ 18.

### C.   The NSL Notified Respondent Of The Nondisclosure Requirement.

As required by statute, the NSL itself also informed respondent that the statutory nondisclosure

obligation was being imposed under 18 U.S.C. § 2709(c).  *See* Unclassified Good Decl. at ¶¶ 17-18.

The NSL to respondent was therefore issued in full compliance with all statutory requirements,

and the nondisclosure requirement should therefore be enforced under the NSL statute. *See In re*

*National Security Letter.* No. 12-mc-0007, Dkt. No. 17-3 (AJT/IDD) (E.D. Va. April 24, 2012, as

partially unsealed July 23, 2012) (finding "the NSL . . . . was properly issued in accordance with law,

including 18 U.S.C. § 2709").

### III.   The Certification Of Need For Nondisclosure In The National Security Letter Served On Respondent Is Justified, And The Nondisclosure Obligation Is Narrowly Tailored To Serve A Compelling Government Interest.

As (A)AD Good explains in his Declaration, the NSL nondisclosure requirement is applied to

respondent here in order to shield an authorized investigation to protect against international terrorism or

clandestine intelligence activities, and, thereby, protect against a danger to the national security of the

United States and/or interference with the investigation. *See* Classified Good Decl. ¶¶ 24-36;

Unclassified Good Decl. at ¶ 15.  That governmental interest is a manifestly compelling one. *See, e.g.,*

*Department of the Navy* v. *Egan,* 484 U.S. 518, 527 (1988) ("This Court has recognized the

Government's 'compelling interest' in withholding national security information from unauthorized

persons in the course of executive business"); *Haig v. Agee,* 453 U.S. 280, 307 (1981) ("no

governmental interest is more compelling than the security of the Nation.").

Congress repeatedly has recognized the need for secrecy when conducting counterintelligence

and counter-terrorism investigations, and so each of the several statutes allowing issuance of NSLs

includes a nondisclosure provision similar to 18 U.S.C. § 2709(c).[7] As Congress has explained, "the FBI could not effectively monitor and counter the clandestine activities of hostile espionage agents and terrorists if they had to be notified that the FBI sought their . . . records for counterintelligence investigations," and the "effective conduct of FBI counterintelligence activities requires such non-disclosure." H. REP. NO. 99-690(1) at 15, 18, *reprinted in* 1986 U.S.C.C.A.N. 5341, 5345 (regarding enactment of 12 U.S.C. § 3414(a)(5)).  Congress also has imposed similar nondisclosure requirements in connection with the use of other investigative techniques apart from NSLs in national security investigations.[8]

The NSL here is carefully tailored to advance the public interest, support the FBI's investigation of a target, and protect national security without unnecessarily restricting expression. By its terms, the nondisclosure requirement of the NSL narrowly applies only to prevent the respondent's disclosure of the fact that the government "has sought or obtained access to information or records" under 18 U.S.C. § 2709. The NSL does not purport to prohibit respondent from disclosing any other information, and places no restriction on respondent's ability to engage in general public discussions regarding matters of public concern. As discussed in the Classified Good Declaration, the complete application of the

---

[7] *See* 12 U.S.C. § 3414(a)(1) (requests from certain government authorities for financial records); 12 U.S.C. § 3414(a)(5) (FBI requests to financial institutions for financial records of customers); 15 U.S.C. § 1681u (FBI requests to consumer reporting agencies for records seeking identification of financial institutions and other identifying information of consumers); 15 U.S.C. § 1681v (requests to consumer reporting agencies for consumer reports and all other information in consumers' files); 50 U.S.C. § 436(b) (requests to financial institutions or consumer reporting agencies for financial information and consumer reports needed for authorized law enforcement investigation, counterintelligence inquiry, or security determination).

[8] *See* 50 U.S.C. § 1842(d)(2)(B) (pen register or trap and trace device for foreign intelligence and counter-terrorism investigations); 50 U.S.C. § 1861(d)(2)(order for production of tangible things in connection with national security investigations); 50 U.S.C. § 1802(a)(4)(A) (electronic surveillance to intercept foreign intelligence information); 50 U.S.C. § 1822(a)(4)(A) (physical search for foreign intelligence information).

nondisclosure requirement is necessary to prevent the national security harms described therein; that is, there is no information about the NSL that can be disclosed without a reasonably likely harm to national security, including the fact that Respondent has received an NSL or the approximate date on which it received the NSL. *See* Classified Good Decl. at ¶ 30. The nondisclosure requirement is therefore tailored as narrowly as possible to serve the compelling interests described above.

### IV.    The NSL Is Otherwise Valid And Enforceable.

As set forth above, the NSL issued to respondent satisfied all the applicable statutory criteria. It is, moreover, valid under law, and should be enforced by the Court. *Accord* 18 U.S.C. § 3511(a) (when an NSL recipient challenges the NSL, a court may modify or set it aside only if it is "unreasonable, oppressive, or otherwise unlawful").

The NSL nondisclosure requirement imposes a necessary restriction on what respondent may disclose. As explained below, the nondisclosure requirement, both facially and as applied to respondent here, is proper. It complies with the First Amendment, is not a classic prior restraint, and survives any properly-applied scrutiny because it is narrowly tailored to serve the paramount governmental and public interest in national security.

### A.    The Government May Validly Require That Private Parties Not Disclose Information Gained Through Participation In An Official Investigation.

The critical need for secrecy in national security investigations explained above and in the Good Declaration provides the explanation and justification for the nondisclosure requirement of the NSL served on respondent. When relevant information is in the hands only of third parties, requests from the government for the information unavoidably notify those parties of the investigation and give them knowledge to which they were not previously privy. In these circumstances, the best way to prevent the investigation from being compromised is to obligate the private party not to disclose information about

the investigation that it has learned through its own involvement.

Numerous judicial decisions make clear that restrictions on a party's disclosure of information obtained through involvement in confidential proceedings stand on a firmer constitutional footing than restrictions on the disclosure of information obtained through independent means. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), the Supreme Court upheld the constitutionality of a judicial order that prohibited parties to a civil suit from disclosing sensitive information obtained through pretrial discovery. In rejecting a First Amendment challenge to the order, the Court noted that the parties "gained the information they wish to disseminate only by virtue of the trial court's discovery processes," which themselves were made available as a matter of legislative grace rather than constitutional right. 467 U.S. at 32. The Court found that "control over [disclosure of] the discovered information does not raise the same specter of . . . censorship that such control might suggest in other situations." *Id.*

The Supreme Court relied on this distinction again in *Butterworth v. Smith*, 494 U.S. 624 (1990), in which the Court held that Florida could not constitutionally prohibit a grand jury witness from disclosing the substance of his testimony after the term of the grand jury had ended. In so holding, the Court distinguished *Rhinehart* on the ground that "[h]ere . . . we deal only with [the witness's] right to divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury." *Id.* at 632; *id.* at 636 (Scalia, J., concurring) ("[q]uite a different question is presented . . . by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires not 'on his own' but only by virtue of being made a witness.").[9]

---

[9] Lower courts likewise have upheld similar nondisclosure requirements based on this principle. *See Hoffman-Pugh v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003) ("a [constitutional] line should be drawn between information the witness possessed prior to becoming a witness and information the

Section 2709(c) is analogous to the grand jury and other investigatory nondisclosure provisions discussed above. Indeed, 18 U.S.C. § 2709 is intended explicitly to mirror grand jury subpoena powers in many key respects. *See* H. REP. NO. 107-236(I) at 61-62 (Congress sought to "harmonize" § 2709 "with existing criminal law where an Assistant United States Attorney may issue a grand jury subpoena for all such records in a criminal case."). In *Doe v. Ashcroft*, a case considering the facial constitutionality of 18 U.S.C. § 2709(c), the court concluded that "[t]he principle that *Rhinehart* and its progeny represent is directly applicable" to § 2709 because "[a]n NSL recipient or other person covered by the statute learns that an NSL has been issued only by virtue of his particular role in the underlying investigation." 334 F. Supp. 2d 471, 519 (S.D.N.Y. 2004), *vacated on other grounds, Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006); *see also id.* at 518 (the "laws which prohibit persons from disclosing information they learn solely by means of participating in confidential government proceedings trigger less First Amendment concerns tha[n] laws which prohibit disclosing information a person obtains independently."). And in *Doe v. Mukasey*, 549 F.3d 861 (2d Cir. 2008), a subsequent appeal in that litigation discussed further below, the Second Circuit held that "[t]he nondisclosure requirement of subsection 2709(c) is not a typical prior restraint or a typical content-based restriction warranting the most rigorous First Amendment scrutiny." 549 F.3d at 877.[10]

---

witness obtained through her actual participation in the grand jury process"; upholding statute prohibiting disclosure of, *inter alia*, information sought by prosecution in grand jury); *In Re Subpoena to Testify*, 864 F.2d 1559, 1562 (11th Cir. 1989) (similar); *First Am. Coalition v. Judicial Review Bd.*, 784 F.2d 467, 479 (3d Cir. 1986) (*en banc*) (state may prohibit witnesses and other persons "from disclosing proceedings taking place before" a judicial misconduct investigation board); *Small v. Ramsey*, 280 F.R.D. 264, 284 (N.D.W.Va. 2012) ("an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny").

[10] In *Mukasey*, the Second Circuit did not fully accept the analogy between the NSL nondisclosure requirement and those in proceedings in which "interests in secrecy arise from the nature of the proceeding," such as grand juries, because "the nondisclosure requirement of subsection 2709(c) is imposed at the demand of the Executive Branch under circumstances where secrecy might or might

Indeed, the nondisclosure requirement is not a typical prior restraint. In any event, because the nondisclosure requirement is accompanied by procedural protections that meet or exceed those courts have imposed when considering prior restraints, it passes constitutional muster.

**B.     The Nondisclosure Requirement Of The NSL Served On Respondent Is Not A Classic Prior Restraint Subject To Heightened First Amendment Scrutiny.**

As the Second Circuit held in upholding the NSL statute against a First Amendment challenge, the nondisclosure obligation imposed on respondent here "is not a typical prior restraint or a typical content-based restriction[.]" such as a licensing scheme for speech in which the plaintiff's right to speak is conditioned on prior approval from the government. *See Doe v. Mukasey*, 549 F.3d 861, 877 (2d Cir. 2008). *Compare id. with City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988); *see also City of Lakewood*, 486 U.S. at 764 (distinguishing between statute imposing prohibition on speech and one conditioning speech on obtaining a license or permit). Because the NSL restricts limited information obtained only by participation in a confidential investigation, it does not "raise the same specter of censorship" as other restrictions, *Rhinehart*, 467 U.S. at 32, and does not "warrant[] the most rigorous First Amendment scrutiny." *Mukasey*, 549 F.3d at 877.

Here, the NSL categorically prohibits respondent from disclosing that it has received the NSL.

---

not be warranted, depending on the circumstances alleged to justify such secrecy." 549 F.3d at 877. But for all the often-obvious reasons discussed above why national security investigations require secrecy, those interests likewise inhere "from the nature of the proceeding" in this context. *Id.* Thus, by requiring that the FBI make a case-by-case determination before applying the nondisclosure requirement, the NSL statutory procedures provide greater protection than what is constitutionally required. In *Butterworth*, for example, the Supreme Court did not require a prosecutor to make a case-by-case determination of whether "witnesses would be hesitant to come forward" or "less likely to testify fully and frankly" absent Federal Rule of Criminal Procedure 6(e), nor whether "those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment." 494 U.S. at 630. Nor do the nondisclosure provisions of wiretap, pen register, and similar laws require the government to make a case-by-case determination of the scope of required confidentiality. *See* 18 U.S.C. §§ 2511, 3123(d); 50 U.S.C. §§ 1842(d), 1861(d); 12 U.S.C. § 3420(b); 31 U.S.C. § 5326.

This is akin to the statute challenged in *Landmark Comm. v. Virginia*, 435 U.S. 829 (1978), which prohibited the disclosure of information about the proceedings of a judicial investigative body and imposed criminal penalties for violation. *See id.* at 830. Such a nondisclosure provision "does not constitute a prior restraint or attempt by the State to censor the news media." *Id.* at 838. Similarly, in *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005), the Eleventh Circuit held that a state law prohibiting disclosure of non-public information obtained through participation in a law enforcement investigation "cannot be characterized as a prior restraint on speech because the threat of criminal sanctions imposed after publication is precisely the kind of restriction that the [Supreme] Court has deemed insufficient to constitute a prior restraint." *Id.* at 1215-16. In short, a categorical prohibition on disclosures enforceable by a penalty after the fact is not a prior restraint. Were that not so, countless state and federal statutes, including every anti-espionage statute that prohibits the disclosure of classified information, would be a prior restraint. *See, e.g.*, 18 U.S.C. §§ 793-794, 798.[11]

Nor is the NSL nondisclosure requirement a classic prior restraint in the form of a court injunction against certain speech or speakers. *See Alexander*, 509 U.S. at 550. In *Freedman v. Maryland*, 380 U.S. 51 (1965), the Supreme Court set forth the strongest statement of First Amendment protection against court-enjoined speech, but the factors that distinguish the NSL nondisclosure requirement from a typical judicial prior restraint of the form considered in *Freedman* underscore why *Freedman* does not apply here. As discussed *supra*, and as the Supreme Court has recognized, court

---

[11] Whenever the executive branch classifies any item of information under Executive Order 13292, it thereby prohibits the disclosure of the information by the information's recipients. *See* 18 U.S.C. § 793 (providing criminal penalties for improper disclosure of classified information). The classification of information itself, like a categorical prohibition of disclosure with threat of subsequent punishment, "does not "constitute[] a prior restraint in the traditional sense." *See McGehee* v. *Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983); *cf. U.S. v. Morrison*, 844 F.2d 1057, 1068 (4th Cir. 1988) (rejecting First Amendment challenge to application of 18 U.S.C. § 793 because prosecution of government employee for disclosing classified information "certainly is no prior restraint case").

orders prohibiting information acquired only by virtue of involvement in an official investigation do not raise the same concerns as other injunctions on speech. *Rhinehart*, 467 U.S. at 32.

*Freedman* involved the constitutionality of a "censorship statute" that made it unlawful to exhibit any motion picture unless and until the film was "submitted [to] . . . and duly approved and licensed by" a state Board of Censors. 380 U.S. at 735 & n.2. The statute directed the Board of Censors to "approve and license such films . . . which are moral and proper," and to "disapprove such as are obscene, or such as tend . . . to debase or corrupt morals or incite to crimes." *Id.* at 52 n.2. The statute did not place any time limit on the Board's deliberations, nor did it provide any "assurance of prompt judicial determination" regarding the Board's decisions. *Id.* at 59-60. There were two primary concerns with this scheme not present here. First, "[b]ecause the censor's business is to censor," institutional bias may lead to the suppression of speech that should be permitted. *Id.* at 57. Second, "if it is made unduly onerous, by reason of delay or otherwise, to seek judicial review, the censor's determination may in practice be final." *Id.* at 58. The "procedural safeguards" adopted by the Supreme Court were "designed to obviate the[se] dangers" by minimizing the burdens of administrative and judicial review. *Id.*

Thus, *Freedman* requires that: "'(1) any [administrative] restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.'" *Thomas* v. *Chicago Park District*, 534 U.S. 316, 321 (2002) (quoting *FW/PBS, Inc.* v. *City of Dallas*, 493 U.S. 215, 227 (1990) (plurality opinion)); *Freedman*, 380 U.S. at 58-60.

The scope and origin of the information at issue here is profoundly different than in *Freedman*.

-18-

The statute there undertook to censor private films whose contents were created independently of the government itself. The NSL and 18 U.S.C. § 2709(c), in contrast, place no restriction on the disclosure of independently obtained information, but are confined to sensitive information that the NSL recipient learns only by his involvement in the government's own investigation.

Another critical difference is that the nature of the "typical First Amendment harm" associated with a law imposing censorship on motion pictures is far greater than the First Amendment risks associated with a law prohibiting the disclosure of confidential information about a national security investigation. *See City of Littleton v. Z.J. Gifts D-4*, 541 U.S. 774, 782-83 (2004). In *Freedman*, the licensing scheme at issue was not confined to obscene speech, but extended to films that "tend to debase or corrupt morals," an open-ended category that reaches protected speech. 380 U.S. at 52 n.2. *See, e.g., Kingsley Intern. Pictures Corp. v. SUNY Regents*, 360 U.S. 684, 688-89 (1959). In contrast, like the secrecy agreement in *United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972), the NSL nondisclosure requirement is aimed at protecting highly sensitive national security investigations, and respondent remains free to disseminate information obtained outside the investigation. Moreover, the reach of the nondisclosure obligation is limited to a narrow category of information that is not characteristically political. The object of the nondisclosure provision is not to censor private speech, but to ensure that the secrecy of the government's own activities is not compromised when those activities must be made known to private persons in order to obtain their assistance. *Cf. Marchetti*, 466 F.2d at 1315 ("The Government . . . has the right and the duty to strive for internal secrecy about the conduct of governmental affairs in areas in which disclosure may reasonably be thought to be inconsistent with the national interest.").

Thus, if this is a prior restraint at all, it is "not the kind of classic prior restraint that requires

exacting First Amendment scrutiny." *Rhinehart*, 467 U.S. at 33; *Mukasey*, 549 F.3d at 877 (NSL

nondisclosure requirement does not "warrant[] the most rigorous First Amendment scrutiny."). And as

noted *supra*, the FBI's determination that disclosure of information concerning the NSL to respondent

may cause one or more of the harms identified in § 2709(c) is similar to a determination that government

information should be classified on national security grounds -- a classification process that, itself, is not

a prior restraint for First Amendment purposes. *See, e.g.*, *McGehee*, 718 F.2d at 1147; *Marchetti*, 466

F.2d at 1317.

      **C.**      **Even If Viewed As A Prior Restraint, The NSL Nondisclosure Requirement Is Valid.**

      Even if viewed as a prior restraint, the NSL nondisclosure requirement crafted by Congress in 18

U.S.C. § 2709(c) and applied here after an individualized determination of need is appropriate. As

discussed further below, it has been upheld for similar application by the Second Circuit. *Mukasey*, 549

F.3d 861. Moreover, to the extent the NSL nondisclosure requirement can be considered a prior

restraint, the U.S. Court of Appeals for the Fourth Circuit has previously upheld restrictions of this type.

      **1. The NSL Nondisclosure Requirement Here Satisfies The Standard Set Out By The Second Circuit Court of Appeals In *Doe v. Mukasey* As Well As the Standard Set Out By The Supreme Court In *Freedman*.**

      In the only final court decision to consider the current version of 18 U.S.C. § 2709 to date, and

the only federal Court of Appeals opinion on the subject, the Second Circuit upheld the nondisclosure

statute. As noted, in *Mukasey*, the Second Circuit held that "[t]he nondisclosure requirement of

subsection 2709(c) is not a typical prior restraint or a typical content-based restriction warranting the

most rigorous First Amendment scrutiny," such that it would always require judicial review prior to, or

immediately following. imposition. 549 F.3d at 877. Rather, applying *Freedman*, the Second Circuit

held that the Government only has a duty to initiate judicial proceedings to enforce an NSL

nondisclosure requirement when there is a prompt assertion by the NSL recipient that it wishes to make

a prohibited disclosure. *Mukasey*, 549 F.3d at 879. The court therefore held, in accordance with

*Freedman*, that the First Amendment would be satisfied by a "reciprocal notice" arrangement, under

which the Government would notify the NSL recipient of the nondisclosure requirement and would give

the recipient 10 days, or some comparable period, to notify the Government that it contests the

requirement. *Id*. If the recipient gave such notice within that brief period, the Government would have

"a limited time, perhaps 30 days," to initiate a judicial proceeding to maintain the nondisclosure

requirement. *Id*. But if the recipient does not give notice within 10 days, the nondisclosure requirement

would remain in effect without the need for any further action on the part of the Government. *Id*. The

court noted that the Government itself expected very few recipients to wish to make disclosures

regarding NSLs, which would mean that the Government would rarely find itself called on to initiate

judicial proceedings to maintain the nondisclosure requirement. *Id*.[12]

As noted above, in response to *Mukasey*, the FBI revised its NSL procedures to accommodate

the reciprocal notice and judicial review scheme suggested by the Second Circuit. *See* Unclassified

Good Decl. at ¶ 17. The FBI informs recipients of the reciprocal notice procedure in the text of the

---

[12] Reasoning that the Government might be able to implement this proposed "reciprocal notice" scheme without the need for further legislation, the *Mukasey* court declined to invalidate either § 2709(c) or § 3511(b) on its face, and invalidated both provisions "only to the extent that they fail to provide for Government-initiated judicial review." The *Mukasey* court allowed the Government to "respond to this partial invalidation ruling by using the suggested reciprocal notice procedure," 549 F.3d at 884-85, and "limit[ed]" the injunction against the statute imposed by the district court "to enjoining FBI officials from enforcing the nondisclosure requirement of section 2709(c) in the absence of Government-initiated judicial review." 549 F.3d at 885. The *Mukasey* court also considered the constitutional adequacy of the standards for judicial review in Section 3511(b) and held that those standards were deficient in only one respect – the requirement that the district court treat the FBI's determinations regarding national security and diplomatic relations as "conclusive" in the absence of bad faith. 549 F.3d at 882-83. The court concluded this requirement was severable from the remainder of the NSL statute. 549 F.3d at 885.

FBI's standard NSL, and the NSL to Respondent included that language. *Id.* at ¶ 18. And, as in this case, the FBI has assumed the burden of initiating judicial review within approximately thirty days of receiving an objection. To the extent the NSL nondisclosure requirement can be viewed as a prior restraint, its post-*Mukasey* implementation, including its application to Respondent, passes constitutional muster.[13]

Indeed, the NSL served on respondent here even complies with the strict protections afforded by *Freedman* for a classic prior restraint. *Freedman* requires that in the case of a classic prior restraint: "'(1) any [administrative] restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.'" *Thomas*, 534 U.S. at 321 (construing *Freedman*, 380 U.S. at 58-60; additional citations omitted).

As noted, the FBI informed respondent that it would seek judicial review to enforce the NSL nondisclosure requirement, if at all, within approximately 30 days after respondent lodged its objection with the government, and the FBI initiated this proceeding in accordance with that commitment. *See*

---

[13] The enforcement of NSL nondisclosure requirements by the United States District Court for the Northern District of California in a case currently on appeal supports the constitutionality of the nondisclosure requirement as applied to Respondent. That Court disagreed with the Second Circuit's conclusion in *Mukasey* and held the NSL statute facially unconstitutional in an NSL challenge brought by a mobile telephone service provider. *In re National Security Letter*, 930 F. Supp. 2d 1064 (N.D. Cal. 2013) (ruling that the Second Circuit's narrowing construction of the NSL statute was inconsistent with the legislative history and the text of the statute); *see In re NSL*, No. 13-16732 (9th Cir. 2013) (appeal briefed and pending before the Ninth Circuit Court of Appeals). During the pendency of the appeal, however, the same judge in the Northern District of California has reviewed further as-applied challenges to NSLs, including a challenge brought by the *In re NSL*, petitioner, and concluded that the Government had complied with the statutory and constitutional requirements as-applied to the petitioners by implementing the *Mukasey* reciprocal-notice procedure. The Court, therefore, ordered enforcement of the NSLs at issue in these subsequent proceedings.

Factual Background, *supra*; Unclassified Good Decl. at ¶ 25. That was the "specified brief period" of *Freedman*, and so the NSL at issue here satisfies the first *Freedman* prong, even though the NSL itself committed the government to seek prompt judicial review only pursuant to an objection made within ten days of the service of the NSL. *See* Factual Background, *supra*. The second *Freedman* requirement is that expeditious review in fact be available. *See Thomas*, 534 U.S. at 321. The Court has ordered prompt briefing of this matter, satisfying the second *Freedman* requirement. *Id.* Finally, in the NSL served on Respondent, FBI informed respondent how the government would comply with the third *Freedman* prong – that it would "bear the burden of going to court" to enforce the nondisclosure requirement if necessary. *See Thomas*, 534 U.S. at 321.

      **2.    The NSL Nondisclosure Requirement Is Consistent With A Prior Restraint On Publication Of National Security Information Upheld as Constitutional By the Fourth Circuit.**

In *Marchetti*, the United States sought to enjoin a former Central Intelligence Agency employee from publishing a proposed book that included classified information in violation of his secrecy agreement and secrecy oath. The United States District Court for the Eastern District of Virginia granted an injunction, and the Court of Appeals affirmed. The Fourth Circuit, considering the injunction against the former employee to be a prior restraint and following *Freedman*, upheld the injunction. *See Marchetti*, 466 F.2d at 1317. The Court of Appeals held that "the Government's need for secrecy in this area lends justification to a system of prior restraint against disclosure" by current and former employees of classified information obtained in their employment. *Id.* at 1316-17. The Court continued:

> One may speculate that ordinary criminal sanctions might suffice to prevent unauthorized disclosure of such information, but the risk of harm from disclosure is so great and maintenance of the confidentiality of the information so necessary that greater and more positive assurance is warranted. Some prior restraints in some circumstances are approvable of course.

*Id.* (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)). Thus, the Court concluded that, given the nature and sensitivity of the national security information at issue and the gravity of the harm that could be expected to flow from disclosure, while prompt judicial review should be available, the full scope of *Freedman* procedures did not apply and the government was not required to seek judicial review itself. *Id.*

Likewise, Congress determined here that, upon an individualized determination by a senior FBI official that nondisclosure is required to prevent serious harm to, *inter alia*, national security, imposition of the nondisclosure obligation is warranted. Moreover, *Marchetti* is not distinguishable on the ground that it involved enforcement of a secrecy agreement, not a statute. The Fourth Circuit made it clear that it was adjudicating Marchetti's First Amendment rights, not ignoring those rights on the basis of any contractual undertaking. *Marchetti*, 466 F.2d at 1317 (the employee's secrecy "agreement is enforceable only because it is not a violation of," not in spite of, his First Amendment rights).

Accordingly, even if the NSL nondisclosure requirement is viewed as a prior restraint, it is nonetheless valid.

## CONCLUSION

The NSL nondisclosure requirement applied to respondent here is justified under the facts set forth by (A)AD Good in his classified declaration. Moreover, it meets or exceeds any applicable statutory or constitutional procedures. For all of the foregoing reasons, the Court should therefore grant the Attorney General's Petition, declare the nondisclosure requirement valid, and enjoin respondent to comply.

Dated: May 8, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROD J. ROSENSTEIN
United States Attorney

TERRY M. HENRY
Assistant Director, Federal Programs Branch

ERIC J. SOSKIN (PA Bar #200663)
STEVEN Y. BRESSLER
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:    (202) 353-0533
Facsimile:    (202) 616-8470
Eric.Soskin@usdoj.gov