FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JUN 22  PM 3: 00

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

| | | |
|---|---|---|
| LORETTA E. LYNCH, | ) | |
|       Attorney General | ) | Case No. 15-cv-001180 |
| | ) | |
| v. | ) | |
| | ) | ~~FILED UNDER SEAL~~ |
| UNDER SEAL | ) | PURSUANT TO |
| | ) | 18 U.S.C. § 3511(d) |
| | ) | |

~~FILED UNDER SEAL~~

2015 JUL 23  PM 3:00

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LORETTA E. LYNCH,            )
            Attorney General   )    Case No. 15-cv-001180
                     )
      v.               )
                     )    ~~FILED UNDER SEAL~~
UNDER SEAL           )    PURSUANT TO
                     )    18 U.S.C. § 3511(d)
                     )

## REPLY IN SUPPORT OF PETITION FOR JUDICIAL REVIEW AND ENFORCEMENT OF A NATIONAL SECURITY LETTER PURSUANT TO 18 U.S.C. § 3511

### INTRODUCTION

Petitioner, the Attorney General of the United States, explained in her opening brief that the National Security Letter ("NSL") served on Respondent complies with applicable law and passes constitutional muster. *See* Mem. of Law in Support of Petition for Judicial Review and Enforcement of [an NSL] Pursuant to 18 U.S.C. § 3511 (May 8, 2015) at 2-5 ("Pet's Br."). The Court should, accordingly, enforce the lawful requirement that Respondent maintain the confidentiality of that NSL.

Respondent's arguments in opposition are meritless. Respondent contends that the statutory authority providing for imposition of nondisclosure requirements in NSLs is facially unconstitutional because it is overbroad and provides for inadequate judicial review, and argues that disclosure of the NSL "cannot risk" the harms enumerated in Petitioner's brief. *See* Respondent's Opposition to Petition to Enforce Nondisclosure Provision, *filed under seal* (June 8, 2015) ("Opp. Br."). But Respondent ignores the June 2, 2015 enactment of the USA FREEDOM Act of 2015 ("USA FREEDOM Act" or "Act"), *see* Pub. L. No. 114-23, which revised the statutory framework governing judicial review for NSLs and added a requirement that the Government periodically review the NSL nondisclosure

requirements and lift them where they are no longer necessary to, *inter alia*, protect national security.[1]

Respondent's further suggestion that the passage of time or generalized disclosures made in other

contexts necessarily obviates the harms of disclosure is unpersuasive: a senior, authorized FBI official

has explained real harms likely to occur if *this* NSL is disclosed *now*.[2]  *See* Classified Declaration of

Donald Good, Acting Assistant Director ("(A)AD") of the Cyber Division of the Federal Bureau of

Investigation ("FBI") at ¶¶ 18, 26-30, previously submitted to the Court *ex parte* and *in camera*

("Classified Good Decl.").  The FBI's expert judgment is due deference, and is not undermined by

---

[1] As explained in the Government's opening brief, in this instance, as with all NSLs issued since 2009, the Government has already followed procedures that mirror those adopted by the Act.

[2] Respondent also objects to the filing of the Petition under seal. *See* Opp. Br. n.2. 18 U.S.C. § 3511(d) specifically authorizes judicial review of NSLs to be conducted under seal, however, and for the reasons explained in the Good Declaration, maintaining this litigation and the identity of Respondent under seal are critical to avoiding the national security harms identified therein. The Government will work to prepare redacted versions of the filings in this matter that protect information that would cause the very harms which the NSL statute, itself, seeks to avoid, and will move the Court to partially unseal filings consistent with those necessary redactions as soon as practicable. Respondent's suggestion that "it is entitled to know more" because it has retained counsel with a "clearance" is not well-founded. The Court should not direct the Government to provide Respondent or its counsel with information for which disclosure risks national security harms. The Executive Branch exercises control over the information, and its decisions regarding such information (including how best to protect the information from inadvertent disclosure) are entitled to the utmost deference. *Cf. Holy Land Found. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (recognizing that disclosure of classified information "is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect"); *In re United States*, 1 F.3d 1251 (Table), 1993 WL 262656 at * 9 (Fed. Cir. Apr. 19, 1993) (finding that, under separation of powers principles, "the access decisions of the Executive may not be countermanded by either coordinate Branch"). It is essential to recognize that every additional disclosure of national security information increases the risk to national security, irrespective of the trustworthiness of any particular individual: "It is not to slight judges, lawyers, or anyone else to suggest that any such disclosure carries with it serious risk that highly sensitive information may be compromised." *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) (quoting *Alfred A. Knopf v. Colby*, 509 F.2d 1362, 1369 (4th Cir. 1975). Indeed, the Supreme Court has acknowledged that even disclosures to a court in camera and ex parte could pose such risks. *See, e.g., United States v. Reynolds*, 345 U.S. 1, 10 (1953) ("[T]he court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.").

Respondent's speculation. For these reasons, the Court should reject Respondent's request that it be permitted "to inform the target of the NSL" and to make other disclosures, as well as its claims that the NSL framework is unconstitutional.[3]

## ADDITIONAL STATUTORY BACKGROUND

In its opening brief, the Government provided an overview of the then-applicable statutory framework governing the NSL served on Respondent. Subsequent to the Government's filing, Congress passed, and the President signed into law, the USA FREEDOM Act of 2015, Pub. L. No. 114-23 (June 2, 2015). In relevant part, the USA FREEDOM Act updates the NSL statutory framework to: 1) include the procedure, previously followed voluntarily by the FBI for all NSLs – including in the NSL challenged here – for Government-initiated judicial review upon objection by a recipient of the NSL; 2) revise the standards of judicial review to be applied to challenges to NSL nondisclosure requirements; and 3) require the Attorney General to establish "termination procedures" that will implement ongoing, periodic review of NSL nondisclosure requirements to ensure that they terminate when no longer necessary to protect against an ongoing harm. *See id.* at §§ 502, 503.[4]

---

[3] Respondent's rhetoric about challenging the "underlying information request," Opp. Br. at 4, is of no relevance to these proceedings. As Petitioner explained in its opening brief, and Respondent does not contest, Respondent did not object to the information request in the NSL and, in fact, provided the requested information to the FBI ███████ *See* Unclassified Declaration of Donald Good, *filed under seal* (May 8, 2015) at ¶ 24 ("Unclassified Good Decl.").

[4] The USA FREEDOM Act's changes to the procedures that are required in serving an NSL and initiating judicial review, see §3511(b)(1); §3511(d), do not apply in this case because the NSL was served and litigation was initiated under the prior version of the statute. However, the amended procedures governing judicial review, see §3511(b)(2)-(3), do apply because this litigation is ongoing and must comply with the new standards. *See Bigelow v. Virginia*, 421 U.S. 809, 817-18 (1975); *Landgraf v. USI Film Products*, 511 U.S. 244, 275, 280 (1994).

The first two requirements parallel the narrowed construction the Second Circuit gave the prior NSL statute to ensure its constitutionality, procedures that were adopted thereafter by the FBI, including in this instance. *See* Pet's Br. at 21-23; *Mukasey v. Doe*, 549 F.3d 861, 883-84 (2d Cir. 2008). The third requirement ███████████████████████████ FBI to begin conducting periodic reviews of nondisclosure requirements to ensure that they remain necessary. ███████████████████

███████████████████████████████████████████████████

The USA FREEDOM Act's judicial review procedure for NSL nondisclosure requirements allows the government to assume the burden of seeking judicial review at any time, as it has done here. *See* Pub. L. 114-23 § 502(g). When the recipient of an NSL "wishes to have a court review a nondisclosure requirement imposed in connection with the request or order," the recipient has two choices. *Id.* The recipient either may "notify the Government," or itself may "file a petition for judicial review" in federal district court, in the district where the recipient does business or resides. *Id.* In the event that the recipient chooses to notify the Government, the Government then bears the burden of initiating review, and must "apply for an order prohibiting the disclosure of the existence or contents of the relevant request or order," doing so "[n]ot later than 30 days" after receiving the request.[5] *Id.* "[D]uring the pendency of proceedings," the nondisclosure requirement remains in effect and the district court is requested to "rule expeditiously" on the Government's application. *Id.* In addition, the Act requires that every NSL must include notice of the availability of this judicial review procedure. *See* Pub. L. 114-23 § 503(a).

---

[5] Venue for a government-initiated judicial review proceeding lies in the district in which the recipient of the NSL does business, or in "any judicial district within which" the underlying investigation "is being conducted." Pub. L. 114-23 § 502(g). As explained in the Declaration of Acting Assistant Director Good, that requirement is met here. *See* Classified Good Decl. ¶ 14.

-4-

Whether the Government initiates judicial review or responds to a recipient's petition, the USA FREEDOM Act specifies that – for NSLs issued by the FBI – a senior DOJ or FBI official (no lower than an Assistant Attorney General or Special Agent in Charge of an FBI field office) provide:

> a certification . . . containing a statement of specific facts indicating that the absence of a prohibition of disclosure . . . may result in:
> '(A) a danger to the national security of the United States;
> '(B) interference with a criminal, counterterrorism, or counterintelligence investigation;
> '(C) interference with diplomatic relations; or
> '(D) danger to the life or physical safety of any person. '

Pub. L. 114-23 § 502(g). If the district court conducting judicial review concludes that "there is reason to believe that disclosure of the information subject to the nondisclosure requirement during the applicable time period may result in" one of the specified harms, it should issue a nondisclosure order, or extend an existing order. *Id.*

As to the new termination procedures, the USA FREEDOM Act requires that such procedures be adopted "not later than 180 days after the date of enactment" of the Act, which will occur in late 2015. Pub. L. 114-23 § 502(f). The Attorney General is instructed to create procedures that will be required for any NSL nondisclosure provision. These procedures will include:

> (A)     the review at appropriate intervals of such a nondisclosure requirement to assess whether the facts supporting nondisclosure continue to exist;
> (B)     the termination of such a nondisclosure requirement if the facts no longer support nondisclosure; and
> (C)     appropriate notice to the recipient of the national security letter, or officer, employee, or agent thereof, subject to the nondisclosure requirement, and the applicable court as appropriate, that the nondisclosure requirement has been terminated.

*Id.* The USA FREEDOM Act thus not only "allows" but "requires" the Government "to rescind the non-disclosure order once the impetus for it has passed." In this case, the result of such a review is embodied in the declarations of Acting Assistant Director Good, which explain why continued,

complete nondisclosure of the NSL to Respondent is necessary to protect against the harms enumerated in § 2709.

## ARGUMENT

### I. The Court Should Not Reach Respondent's Purported Facial Challenge to the NSL Statutes, but Should Find the NSL Nondisclosure Requirement on Respondent is Lawful.

Much of Respondent's opposition is dedicated to a facial challenge to the nondisclosure and judicial review provisions of the prior NSL statute. Specifically, Respondent alleges that the nondisclosure requirement constitutes an unconstitutional prior restraint and is unconstitutionally overbroad, and that the statutory judicial review provisions impermissibly limit a court's evaluation of the propriety of NSL nondisclosure requirements. As explained in Petitioner's opening brief and reinforced below, however, the Government has properly imposed a nondisclosure requirement in this instance, and because "[a]s applied challenges are the basic building blocks of constitutional adjudication," the Court should not entertain a facial challenge to a statute that has been constitutionally applied to the challenger. *See Gonzales v. Carhart*, 550 U.S. 124, 168 (2007); *Parker v. Levy*, 417 U.S. 733, 759 (1974) ("a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)).

Respondent's overbreadth challenge should likewise be rejected as an inappropriate effort to convert Respondent's objection to enforcement of the NSL at issue here into an "unnecessar[y] . . . wholesale attack upon . . . federal laws." *Renne v. Geary*, 501 U.S. 312, 324 (1991) (it is not "generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied"). Although courts may entertain an overbreadth challenge in the First Amendment context, such a challenge is only appropriate where a "substantial number" of a law's

applications are unconstitutional, "'judged in relation to the statute's plainly legitimate sweep.'" *New York v. Ferber*, 458 U.S. 747, 769-71 (1982) (quoting *Broadrick*, 413 U.S. at 615). But courts should not apply the "'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Wash St. Grange*, 552 U.S. at 450 (citing *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 (1988)). It is not sufficient for a challenger merely to hypothesize scenarios in which the NSL statute might conceivably be applied unconstitutionally. *See, e.g.*, *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984); *Parker v. Levy*, 417 U.S. 733, 760 (1974). Rather, Respondent "must demonstrate from the text of [the applicable statute] and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally," *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988), and Respondent has not done so here.[6]

As an initial matter, Respondent's facial challenges, including overbreadth, must be considered in light of the current version of the NSL as revised through the USA FREEDOM ACT to avoid

---

[6] Respondent also suggests it is entitled to bring a facial challenge because "no set of circumstances exists under which the law would be valid." Opp. Br. at 11 (quoting *Greater Baltimore Ctr. for Pregnancy Concerns v. Mayor and City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013). As explained below, however, the NSL statute is constitutional as applied to Respondent, so a facial challenge is not appropriate here under the "no set of circumstances" exception. *Cf. In re Matter of NSLs*, Order Denying Petition to Set Aside and Granting Cross-Petition to Enforce, No. 13cv1165-SI (N.D. Cal. August 12, 2013) (enforcing 2 NSLs), *appeal docketed*, No. 13-16732 (9th Cir. argued Oct. 14, 2014); *In re Matter of NSLs*, Order Denying Petition to Set Aside, Denying Motion to Stay, and Granting Cross-Petition to Enforce, No. 13mc80089-SI (N.D. Cal. August 12, 2013) (enforcing 2 NSLs), *appeal docketed*, No. 13-16731 (9th Cir. argued Oct. 14, 2014); *In re NSLs*, Order Denying Petition to Set Aside and Granting Cross-Petition to Enforce, No. 13mc80063-SI (N.D. Cal. May 28, 2013) (Amended Order for Public Release enforcing 17 NSLs); *In re NSLs*, Order, No. 13mc80063-SI (N.D. Cal. May 23, 2013) (enforcing 2 NSLs); In re National Security Letter, No. 12-mc-0007, Dkt. No. 17-3 (AJT/IDD) (E.D. Va. April 24, 2012, as partially unsealed July 23, 2012).

justiciability problems.  *See Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006).[7]  To the extent

Respondent's overbreadth arguments can be ascertained from its brief, Respondent appears to rely on

the opinion of a federal district court finding the statute to be overbroad because it authorizes

nondisclosure orders of "unlimited duration" and those orders reach "to the very fact of having

received" an NSL.  *See* Opp. Br. at 18 (citing *In re NSL*, 930 F. Supp. 2d 1064, 1075-76 (N.D. Cal.

2013)).[8]  Adoption of the USA FREEDOM Act, however, addresses the duration of NSL nondisclosure

orders through its provision for termination procedures to review whether the harms of disclosure

remain over time after an NSL is served.  Pub. L. 114-23 § 502(f).  And, in light of (A)AD Good's

explanation of why disclosure of the *fact* of Respondent's receipt of an NSL is likely to cause national

security harms, Respondent's assertions that such disclosure is harmless and that the prospect of

nondisclosure requirements of unlimited duration renders the NSL statute overbroad are therefore

unpersuasive.  *See* Classified Good Decl. at ¶¶ 29, 31-33; *infra* Part II A.  Indeed, Acting Assistant

Director Good's determination that disclosure would be harmful here is entitled to deference.  *E.g.,*

---

[7] Even as to the prior version of the statute, however, Respondent failed to meet the standards for an overbreadth challenge to be heard.  It is well-established that overbreadth should not be "invoked when a limiting construction has been or could be placed on the challenged statute," *Broadrick*, 413 U.S. at 613 (citations omitted), and here, the FBI's usage of NSLs since 2009 has been pursuant to the limiting construction suggested by *Mukasey*.  Pet's Br. at 20-23; *Mukasey*, 549 F.3d 861.  In addition, Respondent failed to demonstrate that the prior statute was overbroad in a "substantial number" of applications.  *Ferber* at 770.  Respondent acknowledged that, in thousands of cases where appropriate, the Government issues NSLs *without* nondisclosure orders.  Opp. Br. at 3 (citing *In re NSL*, 930 F. Supp. 2d 1064, 1074 (N.D. Cal. 2013)).  And the fact that few of the NSL nondisclosure requirements imposed under the prior statute were brought to courts for judicial review, Opp. Br. at 3-4, far from suggesting the statute is unconstitutional, instead demonstrates that, as the *Mukasey* court discussed, most recipients did not manifest an interest in challenging the nondisclosure requirements.  *See* 549 F.3d at 879.

[8] Further, by codifying judicial review procedures and a requirement that NSL recipients subject to a nondisclosure order be notified of those procedures, the USA FREEDOM Act revisions undercut any suggestion that there are others on whose behalf a constitutional challenge needs to be heard in this instance.  *See Vincent*, 466 U.S. 800-01.

*Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988) (noting the reluctance of the courts "to intrude upon the authority of the Executive" in national security affairs).

For these reasons, the Court should neither "anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," *Wash. State Grange*, 552 U.S. at 450-51 (internal quotations omitted), and therefore should not entertain a facial or overbreadth challenge. Rather, this Court should consider the question before it: whether the NSL to Respondent is lawful and whether the nondisclosure requirement should continue in effect.

## II.     The NSL Nondisclosure Requirement, as Applied to Petitioner, is Lawful.

### A. Disclosure Of the NSL To The Target of the FBI's Investigation Would Reasonably Be Expected to Harm National Security, As Would Respondent's Other Requested Disclosures.

Respondent contends that the Government's assertion of national security harms in support of the Petition is implausible because the number of users registered to Respondent's services and the passage of more than ▮▮▮▮▮ since Respondent's compliance with the NSL ensures that disclosure "cannot risk any of the harms enumerated" in the statute. Op. Br. at 23-24. Respondent's argument is misguided. As the Classified Good Declaration explains, disclosure *at this time* is reasonably expected to cause harm to national security. ¶¶ 23-34. First, Respondent seeks to inform the investigative *target* of the investigation itself. *See* Opp. Br. 1 & n.1. The risk of harm to national security from a disclosure directly to the target is very great, as (A)AG Good explained. *See* Classified Good Decl. at ¶¶ 24-26. Further, this harm would exist even if Respondent made a more limited disclosure, because such disclosure would link Respondent to a particular NSL served at a particular point in time in a particular

geographic area of the United States, and this may be sufficient for the target to change tactics and stop using Respondent's services altogether. *See* Classified Good Decl. ¶ 29.

Nor is it the case that the size of Respondent's registered user base mitigates the possibility of national security harm. *See* Opp. Br. at 10-11 & 23-24. Respondent's argument rests on a mistaken assumption that *all users* are equally likely to be the targets of NSLs. They are not. Accordingly, the relevant pool is not Respondent's base of innocent, registered users, but the set of active users knowingly engaged in unlawful activities likely to subject them to FBI surveillance in a particular geography at a particular time, and within this relatively narrow group, disclosure that Respondent received an NSL within a particular time could be combined with other pieces of information to the detriment of national security. *See* Classified Good Decl. at ¶ 6; *Cf. Bowers v. Dep't of Justice*, 930 F.2d 350 (4th Cir. 1991) (Individual pieces of "information may often be dull, repetitive and even tedious, but when [] considered with other bits and pieces of information, the total may present a picture that is detrimental to the national security of the United States."). Moreover, this harm multiplies if the identities of providers in NSL enforcement proceedings are routinely revealed. On an aggregate basis, *see Healy v. Beer Institute Inc.*, 491 U.S. 324, 336 (1989); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985), such disclosures would divulge substantial, discrete information concerning the volume and frequency of NSLs issued and the geographic venues of enforcement proceedings, and tie particular providers to particular NSLs issued at particular points in time. This window into the universe of NSLs issued by the FBI would provide a wealth of detailed information to our adversaries, contrary to the structure and intent of the statutory scheme, and would help to facilitate detection and evasion of our intelligence and counter-terrorism efforts.[9]

---

[9] For this reason, Respondent's contention that the nondisclosure requirement at issue here is

Respondent's claim that the need for secrecy is undercut by the publication of aggregate statistics by electronic communications providers identifying how many NSLs they have received, in bands of 1,000, is in error. As an initial matter, as Plaintiff acknowledges, for those providers receiving fewer than 1000 NSLs, the lowest reporting band provides that the provider may acknowledge receiving "between 0-999 NSLs." Opp. Br. at 9; *see* Pub. L. 114-29 at § 604 (setting forth permissible reporting bands). Contrary to Respondent's argument that a "disclosure itself" confirms "that a provider has received (at least) one NSL," such a report *does not* necessarily reveal that the provider has received an NSL at all: Respondent's claim that any provider that had not "received (at least) one NSL . . . would unambiguously disclose that it received no NSLs" is nothing more than unsupported speculation. *See id.* at § 604; Opp. Br. at 25.



---

insufficiently tailored to the national security harm, and would thereby fail strict scrutiny, necessarily fails. *See* Opp. Br. at 19-20. Likewise, because (A)AD Good has assessed the national security risk at the present time, continued nondisclosure is likely to be consistent with the termination procedures to be adopted under the USA FREEDOM Act, once such procedures are implemented.

**B. The Requirement That This NSL Not Be Disclosed Is Not an Unlawful Prior Restraint.**

    **1.   The Government May Properly Limit Dissemination Of Information Learned Only Through Involvement In A Government Investigation.**

The First Amendment does not forbid limits on the disclosure of information learned by participating in confidential government matters. Courts have repeatedly recognized that the Government's need for secrecy in confidential matters provides a firm constitutional footing for restrictions on the disclosure of information learned through participation in such confidential proceedings, particularly those involving government information. Thus, in *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20 (1984), the Supreme Court upheld the constitutionality of a judicial order that prohibited parties to a civil suit from disclosing sensitive information obtained through pretrial discovery. In rejecting a First Amendment challenge to the order, the Court noted that the parties "gained the information they wish to disseminate only by virtue of the trial court's discovery processes," which themselves were made available as a matter of legislative grace, not constitutional right. 467 U.S. at 32. Likewise, in *Butterworth v. Smith*, 494 U.S. 624 (1990), the Court distinguished information a grand jury witness learned through "participation in the proceedings of the grand jury" from the information he possessed previously, thereby suggesting that the "right to divulge information" in such circumstances would not extend to the former. *Id.* at 632; *see id.* at 636 (Scalia, J., concurring) ("[q]uite a different question is presented . . . by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires not 'on his own' but only by virtue of being made a witness.").[10]

---

[10] Lower courts likewise have upheld similar nondisclosure requirements based on this principle. *See Hoffman-Pugh v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003) ("a [constitutional] line should be drawn between information the witness possessed prior to becoming a witness and information the witness obtained through her actual participation in the grand jury process"; upholding statute prohibiting disclosure of, *inter alia*, information sought by prosecution in grand jury); *In Re Subpoena to Testify*, 864 F.2d 1559, 1562 (11th Cir. 1989) (similar); *First Am. Coalition v. Judicial Review Bd.*, 784

Respondent's efforts to distinguish these precedents are unpersuasive.  First, Respondent asserts that NSLs are not comparable to grand jury testimony because they forbid disclosure of "the fact of [a] subpoena or testimony," and constraints on grand jury testimony extend only to the contents of such testimony.  Opp. Br. at 3 (citing *Butterworth v. Smith*, 494 U.S. 624, 636-37 (Scalia, J., concurring) (1990).[11]  Respondent's view appears to be based on a misreading of the concurrence in *Butterworth*, in which Justice Scalia distinguished "information contained within the witness' testimony" that was acquired by the witness on his or her own, from "the fact that the witness conveyed that information to the grand jury."  This passage in *Butterworth* simply does not address "the fact of [a] subpoena or testimony," and its logic, as explained in Petitioner's opening brief, favors secrecy for the fact of a subpoena: *receipt of* the subpoena itself, as with the conveyance of information *to the grand jury*, are equally facts learned by a witness "only by virtue of being made a witness."  *Butterworth*, 494 U.S. at 636-37 (Scalia, J., concurring).  Similarly, Respondent's claim that nondisclosure requirements related to classified information and confidential discovery material are different because the secrecy requirements are entered into "voluntarily," Opp. Br. at 4, 16 (citing cases),  is inconsistent with the rationale of those cases and has already been rejected by the Fourth Circuit. *See United States v. Marchetti*, 466 F.2d 1309, 1316-17 (4th Cir. 1972) (upholding nondisclosure requirements with respect to classified materials, despite noting that a voluntary agreement is not a surrender of First Amendment rights), *cert. denied*, 409 U.S. 1063 (1972). There is no valid basis to treat NSL nondisclosure

---

F.2d 467, 479 (3d Cir. 1986) (*en banc*) (state may prohibit witnesses and other persons "from disclosing proceedings taking place before" a judicial misconduct investigation board); *Small v. Ramsey*, 280 F.R.D. 264, 284 (N.D.W.Va. 2012) ("an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny").

[11] Respondent's brief overlooks that this citation to *Butterworth* is to the opinion of a concurring Justice and not to the majority opinion.

requirements differently from classified information nondisclosure requirements.

Respondent's possession of information here is analogous to information learned through participation in a grand jury proceeding, and for that reason, Congress deliberately fashioned 18 U.S.C. § 2709 after grand-jury proceedings. *See* H. REP. NO. 107-236(I) at 61-62 (Congress sought to "harmonize" § 2709 "with existing criminal law where an Assistant United States Attorney may issue a grand jury subpoena for all such records in a criminal case."). In *Doe v. Ashcroft*, the original district court proceeding underlying the *Mukasey* decision, the court concluded that "[t]he principle that *Rhinehart* and its progeny represent is directly applicable" to § 2709 because "[a]n NSL recipient or other person covered by the statute learns that an NSL has been issued only by virtue of his particular role in the underlying investigation." *Doe v. Ashcroft*, 334 F. Supp. 2d 471, 519 (S.D.N.Y. 2004), *vacated on other grounds, Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006); *see also id.* at 518 (the "laws which prohibit persons from disclosing information they learn solely by means of participating in confidential government proceedings trigger less First Amendment concerns tha[n] laws which prohibit disclosing information a person obtains independently.").[12] Thus, the Government may properly limit

---

[12] In *Mukasey*, the Second Circuit did not fully accept the analogy between the NSL nondisclosure requirement and those in proceedings in which "interests in secrecy arise from the nature of the proceeding," such as grand juries, because "the nondisclosure requirement of subsection 2709(c) is imposed at the demand of the Executive Branch under circumstances where secrecy might or might not be warranted, depending on the circumstances alleged to justify such secrecy." 549 F.3d at 877. But for all the often-obvious reasons discussed above why national security investigations require secrecy, those interests likewise inhere "from the nature of the proceeding" in this context. *Id.* Thus, by requiring that the FBI make a case-by-case determination before applying the nondisclosure requirement, the NSL statutory procedures provide greater protection than what is constitutionally required. In *Butterworth*, for example, the Supreme Court did not require a prosecutor to make a case-by-case determination of whether "witnesses would be hesitant to come forward" or "less likely to testify fully and frankly" absent Federal Rule of Criminal Procedure 6(e), nor whether "those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment." 494 U.S. at 630. Nor do the nondisclosure provisions of wiretap, pen register, and similar laws require the government to make a case-by-case determination of the scope of required confidentiality. *See* 18

Respondent's dissemination of information that is in Respondent's possession only because the FBI

served Respondent with an NSL as part of its investigation of the target.

### 2. The NSL Nondisclosure Requirement Is Not An Unconstitutional Prior Restraint.

Respondent asserts that the nondisclosure requirement applied by the NSL here should be treated

as a prior restraint on speech subject to heightened First Amendment scrutiny. *See* Opp. Br. at 12-15.

As explained in Petitioner's opening brief, however, the NSL nondisclosure requirement is *not* a "classic

prior restraint." *See* Pet's Br. at 16-20.  In *Mukasey*, the Second Circuit recognized as much in

upholding the NSL statute against a First Amendment challenge, finding that the NSL nondisclosure

requirement imposed on a recipient "is not a typical prior restraint or a typical content-based restriction,"

in which a person's right to speak is conditioned on prior approval from the government. *See Doe v.*

*Mukasey*, 549 F.3d 861, 877 (2d Cir. 2008).  *Compare id. with City of Lakewood v. Plain Dealer*

*Publishing Co.*, 486 U.S. 750, 757 (1988).  Rather, because the NSL functions as a categorical

prohibition on disclosures of information learned only by participation in a confidential investigation,

the threat of criminal sanctions imposed after disclosure does not "raise the same specter of censorship"

as other restrictions, *Rhinehart*, 467 U.S. at 32, and does not "warrant[] the most rigorous First

Amendment scrutiny." *Mukasey*, 549 F.3d at 877.  *See also Landmark Comm. v. Virginia*, 435 U.S. 829

(1978); *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005).[13]

---

U.S.C. §§ 2511, 3123(d); 50 U.S.C. §§ 1842(d), 1861(d); 12 U.S.C. § 3420(b); 31 U.S.C. § 5326.

[13] Respondent's attempt to distinguish *Landmark Comm.* and *Cooper* as cases that "involved a
sanction subsequent to restraint," Opp. Br. at 13-14, is unavailing.  As did the statutes in these cases, the
NSL non-disclosure provision indeed bars disclosure only as a subsequent punishment, rather than a
prior restraint.  *See* 18 U.S.C. § 1510(e) (imposing criminal penalties if a disclosure forbidden by an
NSL provision is made "knowingly and with the intent to obstruct an investigation or judicial
proceeding").  The NSL statute therefore operates in the same manner as, for example, 18 U.S.C. § 798,

Importantly, the nondisclosure restriction here does not raise the significant concerns about discretionary censorship that classic prior restraints do.  In part, this is the case because the nondisclosure provision is categorical, and not made on the basis of a discretionary determination about the merits of commonly-expressive speech.  *Compare Freedman*, 380 U.S. at 735 (requiring advance licensing for film distribution based on criteria such as "moral and proper" and "debas[ing] or corrupting"); *City of Littleton* v. *Z.J. Gifts D-4*, 541 U.S. 774, 782-83 (2004).  As the Fourth Circuit has explained, not all prior restraints "must provide *Freedman's* procedural safeguards" because a licensing standard that is based on "considerations of public safety and the like" is "diametrically" different from one that permits censorship.  *Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421, 431-32 (4th Cir. 2007).  Second, because the information at issue here was not created independently of the government itself, the object of the restriction is not to target expressive speech or conduct, but to protect the government's own interests in secrecy.[14]  *Cf. Marchetti*, 466 F.2d at 1315 ("The Government

---

prohibiting the disclosure of classified information, which is "precisely the kind of restriction that the [Supreme] Court has deemed insufficient to constitute a prior restraint." *Cooper*, 408 F.3d at 1215-16; *see Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 591-92 (1976) (Brennan, J., concurring in judgment) (explaining that in *New York Times v. United States* ("*Pentagon Papers*"), 403 U.S. 713 (1974), "a majority of the Court believed that the release of the documents . . . might even be prosecuted after publication").

[14] Contrary to Respondent's claim, the details included in, and existence of, the NSL at issue here are not "core 'political' speech," such as, *e.g.*, "[t]he circulation of an initiative petition [containing] the expression of a desire for political change and a discussion of the merits of the proposed change," *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988), "speech to protest racial discrimination," *NAACP v. Claiborne Hardware*, 458 U.S. 886, 915 (1982), a "candidate's political views," *Libertarian Party v. Judd*, 718 F.3d 308, 315 (4th Cir. 2013), or even "flags of a political sort." *Am. Legion Post 7 of Durham v. City of Durham*, 239 F.3d 601, 607 (4th Cir. 2001).  Respondent remains free to discuss "the extent to which the government can conduct investigations into United States citizens . . . , the means by which the government can compel" responses to NSLs, and NSL nondisclosure requirements in general without reference to the details of this particular NSL or its target.  As explained in Petitioner's opening brief, the NSL nondisclosure requirement here is carefully drawn to limit Respondent's speech only regarding the facts of this NSL, for which secrecy is essential to national security.  *See* Pet's Br. at 10-

. . . has the right and the duty to strive for internal secrecy about the conduct of governmental affairs in areas in which disclosure may reasonably be thought to be inconsistent with the national interest.").[15]

In addition, as *Freedman* and *Mukasey* make clear, even if the NSL nondisclosure requirement here is evaluated as a prior restraint, the requirement is constitutional.  In *Freedman*, the Supreme Court adopted "procedural safeguards" that would "obviate the dangers" of a prior restraint by minimizing the burdens of administrative and judicial review.  380 U.S. at 58; *see also Mukasey*, 529 F.3d 877.  Under *Freedman* "any [administrative] restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained."  *Covenant Media*, 493 F.3d at 431 (quoting *FW/PBS, Inc.* v. *City of Dallas*, 493 U.S. 215, 227 (1990) (plurality opinion)).  Here, upon receiving the objection to continued application of the nondisclosure requirement from Respondent, the Government sought judicial review within approximately thirty days – and thus, Respondent "is . . . not challenging the NSL on this ground."  Opp. Br. at 6 & n.6 (recognizing the Government's adoption of the requirement as set out in *Mukasey*, 549 F.3d at 879).  Second, *Freedman* identified a need for "expeditious judicial review" of the nondisclosure determination.  *Covenant Media*, 493 F.2d 431; *see Freedman*, 380 U.S. 60.  Here, the parties agreed to, and the Court adopted, an expeditious schedule for briefing and presentation of this issue to the Court.  Third, *Freedman* required that the Government "bear the burden of going to court to suppress the speech and [] bear the burden of proof once in court.'" *Thomas* v. *Chicago Park District*, 534 U.S. 316, 321 (2002) (quoting *FW/PBS,* 493 U.S. at 227); *Freedman*, 380 U.S. at 58-60.  Accordingly, the Government initiated this proceeding and submitted to

---

13; Classified Good Decl.

[15] As Petitioner explained in its opening brief, the NSL nondisclosure requirements are therefore similar to the classification of information under Executive Order 13292, which "does not constitute a prior restraint in the traditional sense."  *See* 18 U.S.C. § 793 (providing criminal penalties for improper disclosure of classified information); *McGehee* v. *Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983).

the Court the Good Declaration (in both classified and unclassified form), thereby assuming the burden of proof to demonstrate that the continued need for secrecy in this case is well-founded – which it is. *See* Part I, *supra*; Classified Good Decl. at ¶¶ 18, 26-30.

The Fourth Circuit's conclusions in *Marchetti* likewise confirm that, even if tested as a prior restraint, the NSL nondisclosure requirement is properly imposed on Respondent here. In *Marchetti* – In *Marchetti* – which treated as a prior restraint an injunction against a former CIA employee against disclosing classified information – the Court of Appeals held that the "system of prior restraint" was justified, based largely on "the Government's need for secrecy in this area." *See Marchetti*, 466 F.2d at 1317. Importantly, the Government's need for secrecy is not contingent on the identity of the person holding the information, but rather, the fact that it is the Government's information and that "the risk of harm from disclosure is so great and maintenance of the confidentiality of the information so necessary" that ordinary criminal sanctions are insufficient to prevent disclosure. *Id.* at 1317. Here, where Respondent seeks to inform the target of the investigation of the investigation itself, *see* Opp. Br. 1 & n.1, the risk of harm is extraordinarily great, as explained in the Good Declaration. *See* Classified Good Decl. at ¶¶ 9, 23-27. Congress and the Executive Branch have both determined to rely on the individualized determination by a senior FBI official regarding such national security harms, and so this Court, as did the Court of Appeals in *Marchetti*, should conclude that the NSL is "not a violation of" Respondent's First Amendment rights. *Id.* at 1317. For these reasons, the nondisclosure requirement passes constitutional muster as applied to Respondent.

### III.     The NSL Statute's Judicial Review Procedures, as Amended by the USA FREEDOM Act, Are Constitutional.

As explained above, a facial challenge is not appropriate here because the NSL nondisclosure requirement has been constitutionally applied to Respondent and Respondent has failed to demonstrate that the statute is overbroad. *See supra* Part I. Even if the Court is inclined to consider Respondent's challenge, however, the judicial review procedures Respondent challenges in the NSL statute (as that statute has been amended by the USA FREEDOM Act) are consistent with the Constitution.

Respondent objects to two components of the judicial review procedure for NSLs. First, Respondent asserts that the fact that the statute is satisfied whenever the FBI director says that specified harms "may" occur renders the statute unconstitutional because such uncertainty leaves the statute less than "narrowly tailored." Opp. Br. at 19. But certainty is impossible in making predictions necessary to preserve national security and other compelling Government interests, and courts are not in any better position than law-enforcement, intelligence, and other national security personnel to exercise the expert judgment required to make those predictions. *Cf. Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980); *accord Mukasey*, 549 F.3d 875. Moreover, the same uncertainty lies in every other instance where courts have affirmed secrecy requirements: the harms feared from disclosure of classified information, grand jury proceedings, and judicial misconduct investigations are all possible, not certain: they "may" occur. *See* Pet's Br. at 14-15 (citing, *e.g.*, *Butterworth*, 494 U.S. 624; *First Am. Coalition v. Judicial Review Bd.*, 784 F.2d 467, 479 (3d Cir. 1986)).[16] Reviewing courts may assess whether the proffered national security harms are persuasive in their predictive power, and determine whether to enforce NSL

---

[16] The recognition that the harms feared from disclosure in these other contexts may adequately support a prior restraint puts to rest Respondent's contention that the statute is constitutionally infirm because "the enumerated harms . . . cover more than national security harms." Opp. Br. at 19.

nondisclosure provisions accordingly.

Respondent also contends that the prior version of 18 U.S.C. § 3511(b)(3) violated the constitutional separation of powers of *Freedman* by making certain certifications "conclusive" unless made in bad faith, thereby "circumscrib[ing]" judicial review. Opp. Br. at 5, 7, 20-22 (quoting *In re NSL*, 930 F. Supp. 2d at 1077). With adoption of the USA FREEDOM Act, Congress has replaced the challenged provision with a discretionary determination by the Court that "there is reason to believe that disclosure of the information subject to the nondisclosure requirement during the applicable time period" would cause the enumerated harm to national security.[17] As the Court of Appeals held in *Mukasey* in adopting a similar reading of the prior statute, a statutory standard that provides district courts with the opportunity to "discharge their review responsibility" in this way is constitutional. 549 F.3d 882.[18]

Finally, Respondent's objection to having judicial review conducted in an under seal proceeding is misplaced. *See* Opp. Br. n.2. 18 U.S.C. § 3511(d) specifically authorizes judicial review of NSLs to be conducted under seal, and for the reasons explained in the Good Declaration, maintaining this litigation and the identity of Respondent under seal are critical to avoiding the national security harms identified therein. *See generally* Classified Good Decl. The Government will work to prepare redacted versions of the filings in this matter that protect information that would cause the very harms that the

---

[17] Under the new version of 18 U.S.C. § 3511(b), no distinction is made in the statute between judicial review of an objection made immediately upon receipt of an NSL, and an objection made later. *See* USA FREEDOM Act § 502(g)(1).

NSL statute itself seeks to avoid, and will move the Court to partially unseal filings consistent with those

necessary redactions as soon as practicable.[19]

## CONCLUSION

The NSL nondisclosure requirement applied to Respondent here is justified under the facts set

forth by (A)AD Good in his classified declaration and satisfies or exceeds the applicable statutory and

constitutional standards.  The Court should therefore grant the Attorney General's Petition, declare the

nondisclosure requirement valid, and enjoin respondent to comply.


Dated: June 22, 2015                     Respectfully submitted,

                                          BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General

                                          ROD J. ROSENSTEIN

---

[19] Respondent's suggestion that "it is entitled to know more" about the classified matters discussed in (A)AD Good's Declaration because it has retained counsel with a "clearance" is not well-founded.  The Court should not direct the Government to provide Respondent or his counsel with information for which disclosure risks national security harms.  The Executive Branch exercises control over the information, and its decisions regarding such information (including how best to protect the information from inadvertent disclosure) are entitled to the utmost deference. *Cf. Holy Land Found. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (recognizing that disclosure of classified information "is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect"); *In re United States*, 1 F.3d 1251 (Table), 1993 WL 262656 at * 9 (Fed. Cir. Apr. 19, 1993) (finding that, under separation of powers principles, "the access decisions of the Executive may not be countermanded by either coordinate Branch").  It is essential to recognize that every additional disclosure of national security information increases the risk to national security, irrespective of the trustworthiness of any particular individual: "It is not to slight judges, lawyers, or anyone else to suggest that any such disclosure carries with it serious risk that highly sensitive information may be compromised." *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) (quoting *Alfred A. Knopf v. Colby*, 509 F.2d 1362, 1369 (4th Cir. 1975)).  Indeed, the Supreme Court has acknowledged that even disclosures to a court *in camera* and *ex parte* could pose such risks. *See, e.g., United States v. Reynolds*, 345 U.S. 1, 10 (1953) ("[T]he court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.").

United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

ERIC J. SOSKIN (PA Bar #200663)
Senior Counsel
STEVEN Y. BRESSLER
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:    (202) 353-0533
Facsimile:    (202) 616-8470
Eric.Soskin@usdoj.gov